**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION** | **MDL Case No. 1:22-md-03035-STA-jay**<br>**ALL CASES**<br>**Honorable S. Thomas Anderson** |

**MEMORANDUM OF LAW IN SUPPORT OF AMEC DEFENDANTS' PARTIAL
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Defendants African Methodist Episcopal Church ("AMEC"),[1] erroneously named as African Methodist Episcopal Church, Inc.; AMEC Ministerial Retirement Annuity Plan; AMEC Department of Retirement Services; AMEC General Board; AMEC Council of Bishops; Bishop Samuel L. Green, Sr.; and Bishop James Davis (collectively, "AMEC Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.2(a)(1), submit this Memorandum of Law in Support of their Partial Motion to Dismiss the Consolidated Amended Complaint ("Amended Complaint") (ECF No. 74) filed by Plaintiffs. As detailed below, Counts II, V, VI, VII, VIII, IX and all Alternative Counts XI–XVII of the Amended Complaint fail to state a claim upon which relief can be granted and should be dismissed for the reasons set forth herein. Additionally, Defendants AMEC Council of Bishops and AMEC General Board should be dismissed from the case *in toto* because they are subdivisions of Defendant AMEC.

---

[1] African Methodist Episcopal Church is an unincorporated nonprofit religious association existing under the laws of the state of Pennsylvania. *Ewing, et al. v. Newport Group, Inc.*, W.D. Tenn., Case No. 2:22-cv-02136, ECF No. 52. African Methodist Episcopal Church, Inc. is a subsidiary of African Methodist Episcopal Church. (ECF No. 38).

1

I. **FACTUAL BACKGROUND**

At this stage, on a motion to dismiss under Rule 12, the Amended Complaint's allegations are taken as true. It alleges that AMEC sponsors the AMEC Ministerial Retirement Annuity Plan ("the Annuity Plan"), which provides annuity coverage for salaried personnel of AMEC. Am. Compl. ¶ 103, 113.[2] AMEC contributes some amount equal to a percentage of the annual salary of each enrolled participant into the Annuity Plan. *Id.* at ¶¶ 118, 120. All eligible and enrolled participants are entitled to distributions pursuant to a vesting schedule. ¶ 139. The Annuity Plan is a church plan exempted from ERISA. ¶ 8.

Defendant AMEC Department of Retirement Services ("the Department") is a separate legal entity responsible for administering the Annuity Plan. *Id.* at ¶ 36. Defendant Rev. Dr. Jerome V. Harris ("Harris") served as the Executive Director of the Department from 2000 until June 2021. *Id.* ¶ 26. After he retired, AMEC discovered that Harris had engaged in a long-running conspiracy to embezzle funds and defraud several parties, including the Plaintiffs, with Annuity Plan funds. *Id.* ¶ 153. Upon an internal investigation, AMEC learned that millions of dollars had been diverted into high-risk, speculative, imprudent, and/or fraudulent investments and loans to financial entities that were created, controlled, and/or owned by Harris and other co-conspirators. *Id.* at ¶ 252.

Plaintiffs filed their Amended Complaint, alleging the following causes of actions against these specific AMEC Defendants. AMEC Defendants move to dismiss the highlighted Counts.

| Count I – Breach of Fiduciary Duty | AMEC Defendants (except the Annuity Plan) |

---

[2] For the purpose of the Motion to Dismiss, the Court must assume the facts as pled by the Plaintiffs are true; however, Defendants unequivocally deny that the facts as alleged in the Amended Complaint are accurate as stated. Specifically, AMEC Defendants admit and acknowledge that AMEC sponsors the AMEC Ministerial Retirement Annuity Plan, but they do not concede that the documents attached to Plaintiffs' Amended Complaint as Exhibit A is the operative Plan document that governs and applies.

| | |
|---|---|
| Count II – Claim for Violation of Tennessee Uniform Trust Code for breach of trust and misappropriation of trust funds | AMEC Defendants (except the Annuity Plan) |
| Count III – Negligence | AMEC Defendants (except the Annuity Plan) |
| Count V - Fraudulent Concealment | AMEC Defendants (except the Annuity Plan) |
| Count VI - Fraudulent Misrepresentation | AMEC Defendants (except the Annuity Plan) |
| Count VII – Breach of Contract | AMEC only |
| Count VIII – Claim for Promissory or Equitable Estoppel | AMEC only |
| Count IX – Tort of Outrage | AMEC Defendants (except the Annuity Plan and Bishops Green and Davis) |
| Alternative Counts XI-XVII in the Event Court Determines the Annuity Plan is Directly Governed by ERISA | AMEC Defendants |

## II. LAW AND ARGUMENT

### a. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) unless it contains well-pleaded facts that "state a claim to relief that is plausible on its face." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). This means "labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 545. Instead, a complaint must contain "either direct or inferential allegations respecting *all* of the material elements necessary to sustain recovery under some viable legal theory." *Casas ex rel. Casas v. La Quinta Holdings, Inc.*, No. 2:16-CV-2951-JTF-DKV, 2018 WL 6433143, at *1 (W.D. Tenn. Sept. 28, 2018) (emphasis added).

### b. Count II Fails: AMEC Defendants are not "trustees" under the Tennessee Uniform Trust Code.

Plaintiffs erroneously assert that AMEC Defendants are trustees of the Annuity Plan and have committed violations under the Tennessee Uniform Trust Code ("UTC"). *See* Am. Compl., ¶¶ 342–83. But AMEC Defendants are not trustees as the UTC defines that term; at all relevant times, Harris was the trustee.

Under the UTC, the trustee is the person responsible for administration of the trust. Tenn. Code Ann. § 35-15-801 ("[T]he trustee shall administer the trust . . . in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this chapter."). This is a narrow definition that does not encompass a broad category of "fiduciaries." Here, Harris administered the trust and therefore meets the statutory definition of a trustee. The alleged Annuity Plan document that Plaintiffs attach supports this conclusion. The document defines the trustee as "the person or entity named as trustee herein or in any separate trust forming a part of this Plan, and any successors," and makes the trustee responsible for investing, managing, and controlling Annuity Plan assets. *See* Am. Compl., Exhibit A, ECF No. 74-1, PageID 925, 962. Harris alone had this responsibility—not AMEC, the General Board, the Council of Bishops, the Department, or Bishops Green and Davis. *See id.*; Am. Compl., ¶ 140.[3] Because no AMEC Defendant was a trustee as defined by the UTC, Count II as to the AMEC Defendants must be dismissed.

Plaintiffs acknowledge that Defendant Harris was the Trustee, and they set forth no allegations to support that AMEC Defendants were "trustees" as defined by the UTC. Accordingly, Count II must be dismissed against the AMEC Defendants.

### c. Count V Fails: Plaintiffs Fail to Sufficiently Plead that AMEC Defendants Engaged in Fraudulent Concealment.

The Court should dismiss Count V because Plaintiffs fail to allege fraudulent conduct attributable to AMEC Defendants with sufficient particularity. Fraud claims trigger the heightened pleading standard of Federal Rule of Civil Procedure 9(b). This heightened standard requires the plaintiff to allege fraud claims with particularity, stating "(1) the time, place, and content of the

---

[3] Plaintiffs seemingly conflate the UTC with the Tennessee Uniform Prudent Investor Act ("UPIA") and attempt to shoehorn AMEC Defendants into a trustee role by referencing statutory definitions under the UPIA. But the UPLA is distinct from the claims brought under the UTC. *See* Tenn. Code Ann. §§ 35-14-101–114.

alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (quotations omitted); in other words, "the who, what, when, where, and how of the alleged conduct." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021) (cleaned up).

Here, Plaintiffs fail to allege the who, what, when, where, and how of the alleged conduct on the part of *any* of the AMEC Defendants. Instead, Plaintiffs levy broad and conclusory allegations that name several Defendants at once, disregarding federal pleading standards that require a plaintiff to "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right," *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (citation omitted). Plaintiffs may not rely on broad allegations of collective wrongdoing. *See id.; Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2012) (finding that complaint's collective references to "Defendants" failed to satisfy requirement that plaintiff allege specific facts showing how each defendant violated a constitutional right). But that is exactly what Plaintiffs do here. For example, Paragraph 405 alleges that AMEC, AMEC Department of Retirement Services, AMEC General Board, Council of Bishops, Bishop Green, Bishop Davis, Harris, and Rodney Brown *all* "concealed or suppressed material facts regarding the management of the Fund and lack of oversight of Dr. Harris, his investments, and the balance of the Fund." This sweeping statement does not put each defendant on sufficient notice of the particular misconduct they allegedly committed. Further, such broad allegations lend themselves to fishing expeditions, which runs contrary to the purpose of Rule 9(b). *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255 (6th Cir. 2012).

Plaintiffs' fraud allegations fall flat also because they fail to identify the fraudulent conduct that AMEC Defendants committed. Tennessee courts recognize two actionable types of fraudulent concealment: (1) when a party tricks or contrives another, and (2) when a party has a duty to disclose but fails to do so. *PNC Multifamily Cap'l. Inst'l. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 550 (Tenn. Ct. App. 2012). The latter has two elements: (1) "a party who has a duty to disclose a known fact or condition fails to do so," and (2) "another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998). Nondisclosure only constitutes fraud if the charged party had "knowledge of an existing fact or condition and a duty to disclose that fact or condition." *PNC Multifamily*, 387 S.W.3d at 550.

Here, Plaintiffs fail to plead that AMEC Defendants had *any* knowledge of the material fact that Defendant Harris was misappropriating and recklessly diverting Annuity Plan funds, and Plaintiffs' claim for fraudulent concealment fails. In fact, Plaintiffs acknowledge that "AMEC has publicly stated that it only learned of Defendant Harris' scheme in June 2021, upon his retirement and as part of the transition to new department leadership." Am. Compl., ¶ 236. If AMEC Defendants had no knowledge of Defendant Harris's malfeasance, AMEC Defendants could not have fraudulently concealed that malfeasance from Plaintiffs.

Instead, Plaintiffs allege that Defendants "failed to engage in proper oversight over Defendant Harris and his investment decisions." Am. Compl., ¶ 151. Failure to oversee is not an element of fraudulent concealment. Because Plaintiffs fail to plead fraudulent concealment with sufficient particularity, Count V should be dismissed against AMEC Defendants.

### d. Count VI Fails: Plaintiffs Fail to Allege Fraudulent Misrepresentation with Particularity.

Likewise, Plaintiffs' fraudulent misrepresentation claim fails on its face because it launches lump-sum allegations against all Defendants[4] at once. *See* Am. Compl., ¶¶ 415-422. These sweeping allegations do not provide the "who, what, when, where, and how" sufficient to put each defendant on notice of their particular alleged misconduct. This claim should be dismissed on these grounds alone.

Count VI also suffers the same factual deficiencies as Count V. A plaintiff alleging fraudulent misrepresentation must show that (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *Metro. Gov't of Nashville & Davidson Cty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992). Plaintiffs' allegations fail on (at least) element four.

Plaintiffs claim that AMEC Defendants misrepresented "the true balance and rate of return of the Fund through the use of inaccurate and misleading reported balances in the annual Fund balance updated." Am. Compl., ¶ 416. But again, Plaintiffs fail to allege that AMEC Defendants had *knowledge* of the alleged falsity of the representation being made, or any reason to believe the representations provided by Harris (and purportedly reviewed by Newport and Rodney Brown & Co.) were false.

---

[4] "AMEC Defendants" in this section refers to AMEC Defendants except the Annuity Plan, which was not named in this Count.

Plaintiffs also fail to sufficiently allege that AMEC Defendants acted recklessly. A party is reckless when he "is aware of, but consciously disregards, *a substantial and unjustifiable risk* of such a nature that its disregard constitutes a *gross deviation from the standard of care* that an ordinary person would exercise under all the circumstances." *Davis v. McGuigan*, 325 S.W.3d 149, 156 (Tenn. 2010) (emphasis added). Here, Plaintiffs' allegations as to AMEC Defendants' state of mind do not rise to the level of recklessness. For example, Plaintiffs allege that Defendant AMEC "failed to engage in proper oversight" of the Fund's investments and did not perform proper audits of the Fund. Am. Compl., ¶¶ 151–52, 235. The allegations do not adequately plead a substantial and unjustifiable risk that grossly deviates from the relevant standard of care. In fact, the Amended Complaint is replete with examples of AMEC Defendants' justifiable reliance on sophisticated parties hired to assist with the administration of the Annuity Plan. Newport acted as the Annuity Plan's third-party administrator and provided Annuity Plan participants with statements reflecting account balances that it failed to corroborate. Am. Compl. ¶¶187–88, 235–36. The Department hired certified public accounting firm Rodney Brown and Company to perform annual audits of the Department and Annuity Plan, and Dr. Harris distributed those audits to AMEC Defendants. *See* Am. Compl., ¶¶ 187–88; 215–18. Because Plaintiffs have not alleged facts sufficient to satisfy the fourth element of fraudulent misrepresentation, Count VI against AMEC Defendants should be dismissed.

### e. Count VII Fails: AMEC and Plaintiffs Did Not Have a Contract.

Plaintiffs contend that Defendant AMEC breached contracts consisting of "the [Annuity] Plan documents." Am. Compl., ¶ 433. This claim fails, however, because no contract exists between Defendant AMEC and the Plaintiffs.

Under Tennessee law, a claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages

caused by the breach of the contract." *C & W Asset Acq., LLC v. Oggs,* 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). There is no recognizable contract here. Count VII baldly asserts that "AMEC's [Annuity] Plan documents constitute enforceable contracts." Am. Compl., ¶ 443. The documents themselves make clear that the Annity Plan "<u>shall not be deemed to constitute a contract between the Employer and any Participant or to be a consideration or an inducement for the employment of any Participant or Employee</u>." Am. Compl., Exhibit A*,* ECF No. 74-1, PageID 972 (emphasis added). Thus, no contract exists between Plaintiffs and AMEC, and the Court must dismiss this cause of action.

      **f.  Count VIII Fails: Plaintiffs Fail to Plead that AMEC Made a Promise or that Plaintiffs Reasonably Relied on It.**

Plaintiffs bring a state law claim for promissory or equitable estoppel against AMEC in the event that the Court determines that the Annuity Plan does not constitute an enforceable contract between AMEC and Plaintiffs. Am. Compl., ¶ 442. It too should be dismissed because Plaintiffs fail to sufficiently plead promise and reasonable reliance on said promise.

Promissory estoppel is "a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 848, 2020 WL 3475107 (W.D. Tenn. 2020) (quoting *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007)). A plaintiff must show that (1) a promise was made; (2) the promise was unambiguous and not unenforceably vague; and (3) the plaintiff reasonably relied on the promise to his or her detriment. *Id.* Tennessee courts generally disfavor these claims, and limit application of this doctrine to "exceptional cases.'" *Holt v. Macy's Retail Holdings*, 719 F. Supp. 2d 903, 913 (W.D. Tenn. 2010) (quoting *Chavez*, 245 S.W.3d at 406).

"An exceptional case is found only when a defendant's conduct is 'akin to fraud,'" *Pugh v. Bank of Am.*, 2013 WL 3349649 at *12 (W.D. Tenn. July 2, 2013), which implicates Rule 9(b)'s pleading standard. *See LeBlanc v. Bank of Am., N.A.*, No. 2:13-cv-20001, 2013 WL 3146829, at *16 (W.D. Tenn. June 18, 2013). To meet Rule 9(b)'s particularity requirement, a plaintiff must "assert when the alleged promise was made [and] who specifically made the alleged promise." *Id.* at *16.

Here, Plaintiffs fail to sufficiently plead that they reasonably relied on a promise made by AMEC. A plain reading of the Annuity Plan document Plaintiffs attached to the Amended Complaint as Exhibit A explicitly disclaims the Annuity Plan as inducement for employment: *"**This Plan shall not be deemed** to construe a contract between the Employer and any Participant or to be a consideration or **an inducement for the employment** of any Participant or Employer."* Am. Compl. Exhibit A, ECF No. 74-1, PageID 972 (emphasis added).

Plaintiffs have to show that the promises "*induced an action or forbearance* by [Plaintiffs to their] detriment in reliance on those promises ..." *Launius v. Wells Fargo Bank, N.A.*, No. 3:09-CV-501, 2010 WL 3429666, at *7 (E.D. Tenn. Aug. 27, 2010) (emphasis in original). To show reasonable reliance, Plaintiffs must plead that they substantially changed their position as a result of the alleged promises made by AMEC. *Id.*

Plaintiffs failed to make such a pleading. They allege that they "continued to work for the Church in reliance on AMEC promises, they forewent opportunities to seek other employment that would have paid them benefits, including retirement benefits." Am. Compl. ¶ 448. But as noted *supra*, the alleged Annuity Plan documents to which Plaintiffs point expressly state that the Annuity Plan should not be construed as an inducement for Plaintiffs to work for AMEC. Thus, Plaintiffs' assertion that they reasonably relied on any expressly disclaimed "promises" and

continued working for AMEC holds no water. *See, e.g.*, *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.,* 195 S.W.3d 637, 645–46 (Tenn. Ct. App. 2006) (finding that plaintiff's reliance on alleged oral promise was not reasonable in light of the parties' agreement in the letters of intent).

For these reasons, Plaintiffs' claim for promissory or equitable estoppel should be dismissed.

### g. Count IX Fails: Plaintiffs Fail to Sufficiently Allege Facts to Show AMEC Defendants' Conduct Amounts to the Tort of Outrage.

Plaintiffs' claim for the tort of outrage[5] should be dismissed because the conduct pled does not rise to the level of outrageousness required. Plaintiffs must show that AMEC Defendant's conduct (1) was intentional or reckless; (2) was so outrageous that it cannot be tolerated by civilized society; and (3) resulted in serious mental injury to Plaintiffs. *Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). Here, Plaintiffs lack sufficient allegations on the second and third elements as they relate to Defendants AMEC, the Department, AMEC General Board, and Council of Bishops.

Tennessee courts often turn to the test provided in the Restatement (Second) of Torts § 46 in determining whether conduct is so outrageous that it cannot be tolerated by a civilized society. *See, e.g.*, *Odom v. Claiborne Cty., Tenn.*, 498 S.W.3d 882, 887 (Tenn. Ct. App. 2016). Liability is only found where "the conduct has been so outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965). In other words, a recitation of

---

[5] In Tennessee, the tort of outrage is referred to as intentional infliction of emotional distress. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).

the facts to an average person would illicit the person to exclaim, "Outrageous!" *Id*. The standard for considering conduct extreme and outrageous is high. *Odom*, 498 S.W.3d at 887.

Here, Plaintiffs' allegations fail to meet this high standard. First, Plaintiffs make no specific allegations against any single defendant in their claim for outrage. The allegations in Count IX are made broadly against all Defendants named without regard to who did what. For example, Paragraph 453 conclusorily alleges that all the Defendants named in the Count lied and misrepresented information for the sole purpose of their own financial benefit. Earlier in their Amended Complaint, however, Plaintiffs detail in Paragraphs 91–318 that only Dr. Harris and Robert Eaton lied and misrepresented for their sole financial benefit. In contrast, Plaintiffs did not allege (and cannot allege) that AMEC, the Department, AMEC General Board, or Council of Bishops lied and/or misrepresented for their sole financial benefit. Because there are no specific allegations made against AMEC Defendants regarding their intentional lying or misrepresentation, Plaintiffs have not sufficiently alleged facts to support this claim against these AMEC Defendants.

Notwithstanding, the allegations in the Amended Complaint regarding lying and misrepresentation do not rise to the level of outrageousness required under Tennessee law to support a claim for intentional infliction of emotional distress. "[A] plaintiff must 'show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Sharpe v. Corecivic of Tenn., LLC*, No. 3:20-CV-00122, 2020 WL 6273919, at *2 (M.D. Tenn. Oct. 26, 2020) (quoting *Lourcey*, 146 S.W. 3d at 51).

As the foregoing suggests, "[t]he standard for outrageous conduct is high, indeed, and cases finding conduct sufficient to support an intentional infliction of emotional distress claim are few and far between." *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 789 (M.D. Tenn.

2018). Often cited in this regard is *Johnson v. Woman's Hosp.*, 527 S.W.2d 133 (Tenn. Ct. App. 1975) where a mother was shown her deceased premature baby in a gallon jar of formaldehyde. Another example is where a mother was erroneously told her infant daughter had been sexually abused when, in fact, the child had suffered a "crib death." *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn. Ct. App. 1981); *see also Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747 (Tenn. Ct. App. 1991) (where plaintiff was told that her film could not be developed when, in fact, it had been developed and nude photographs of plaintiff were shown to other employees and plaintiff's acquaintances); *Lourcey*, 146 S.W.3d at 48 (where a postal worker suffered post-traumatic stress disorder after witnessing a man shoot his wife in the head and then commit suicide). Here, Plaintiffs' allegations are far from such shocking or outrageous conduct.

Moreover, to sufficiently plead the element of serious mental injury, Plaintiffs must include specific facts showing that AMEC Defendants alleged outrageous conduct resulted in specific mental injuries to the Plaintiffs. Here, Plaintiffs summarily conclude that "Plaintiffs and other Class members have suffered needless emotional distress." Am. Compl., ¶ 462.  This is not sufficient under federal pleading standards. "Under *Twombly*, again, 'a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Mhoon v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, No. 3:16-CV-01751, 2016 WL 6250379, at *3–4 (M.D. Tenn. Oct. 26, 2016) (quoting *Twombly*, 550 U.S. at 555). Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

*Mhoon* is instructive. In *Mhoon*, the district court found that the plaintiff failed to adequately plead serious mental injury when he claimed he suffered "severe and permanent . . . mental injuries," serious psychological injury," "psychological trauma," and "psychological, and

emotional injury." The district court found that by merely stating that he suffered serious mental, psychological, and emotional injury, the plaintiff did "no more than provide a recitation of an element of the cause of action of outrageous conduct without actually *showing* how he suffered serious mental injury. Thus, the pleading of outrageous conduct failed to meet the standard established by *Twombly* and *Iqbal*." *Id.* at *4 (emphasis in original).

Here, Plaintiffs pled *even less* detail regarding their "serious mental injury" than the plaintiff in *Mhoon*. Plaintiffs, therefore, fail to sufficiently plead the element of serious mental injury to support a claim for intentional infliction of emotional distress. Count IX against AMEC Defendants should be dismissed.

### h. Alternative Counts XI-XVII Fail: The Annuity Plan is not Governed by ERISA.

Because the Annuity Plan is not governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiffs' alternative Counts XI–XVII should be dismissed. ERISA governs certain employers that offer pensions and other benefits to their employees. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1656 (2017). ERISA § 502(a)(1) and 29 U.S.C. § 1132(a)(1), empowers plan participants with civil enforcement remedies to bring suit for ERISA violations. "ERISA generally obligates private employers offering pension plans to adhere to an array of rules designed to ensure plan solvency and protect plan participants." *Stapleton*, 137 S. Ct. 1652 (citation omitted). "Church plans," however, are exempt from ERISA's coverage. *Id.* at 1655; *see also* 29 U.S.C. §§ 1002(33), 1003(b)(2). The Supreme Court has noted that "'church plan[s]' have never had to comply with ERISA's requirements." *Id.* at 1656.

A church plan may become subject to ERISA and plan participants may obtain civil remedies for ERISA violations *if and only if* the church plan administrator makes an election under 26 U.S.C. § 410(d) of the Internal Revenue Code. 29 U.S.C. § 1003(b)(2); *see also Robinson v.*

*Metro. Life Ins. Co.*, No. 12-CV-01373-JAM-AC, 2013 WL 1281868, at *6 (E.D. Cal. Mar. 27, 2013) ("The plain text of 29 U.S.C. § 1003(b)(2) states that a church plan is exempt from ERISA until it makes a § 410(d) election."). Without a § 410(d) election, a church plan is exempt from all provisions of ERISA.

Plaintiffs plead seven ERISA counts and remedies in the alternative—Counts XI through XVII. Am. Compl. ¶¶ 470–530. Each count must be dismissed for failure to state a claim because ERISA protections do not apply to the Annuity Plan. The Annuity Plan fits squarely within the definition of "church plan," and Plaintiffs do not allege that appropriate elections were made to bring the Annuity Plan under the purview of ERISA. Plaintiffs correctly state that a church plan is exempted "unless it affirmatively elected to be governed by ERISA." Am. Compl. ¶ 8. Plaintiffs recognize the church plan exemption and even note the sole way a church plan can become governed by ERISA—an affirmative election—yet Plaintiffs seek exclusive ERISA remedies in the alternative without alleging that an election under § 410(d) has been made.

Because the Annuity Plan is a church plan, Plaintiffs are not parties entitled to bring causes of action under ERISA, nor are they parties entitled to seek ERISA remedies. The Supreme Court has found that "ERISA carefully enumerates the parties entitled to seek relief under [26 U.S.C.] § 502 . . ." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27 (1983). The phrasing of 26 U.S.C. § 502 and 29 U.S.C. § 1132 are instructive. Both specify which persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions under ERISA. "The identity of the party seeking to avail himself of the remedies cannot . . . be ignored. *Only if* a party fits within the definitions of the parties enumerated for particular remedies under ERISA is the party entitled to invoke these remedies." *Madden v. Country Life Ins. Co.*, 835 F. Supp. 1081, 1085 (N.D. Ill. 1993) (emphasis added). Plaintiffs are not ERISA plan

participants, beneficiaries, fiduciaries, or the Secretary of Labor. Consequently, the alternative claims and remedies alleged in Counts XI through XVII should be dismissed because Plaintiffs are not entitled to bring any action under ERISA.

Plaintiffs additionally allege that they are entitled to remedies enumerated in ERISA, although the Annuity Plan is not governed by ERISA. Am. Compl. ¶ 8. Plaintiffs' concessions throughout the Amended Complaint that the Annuity Plan is not governed by ERISA foreclose any claim to ERISA remedies. Plaintiffs allege that although the Annuity Plan is not governed by ERISA, "Defendants have agreed to govern the [Annuity] Plan *as if* it is an ERISA Plan and thus certain remedies may be available as a result of Defendants' conduct." Am. Compl. ¶ 127 (emphasis added). A church plan may voluntarily comply with ERISA, but it cannot contractually "agree" to be subject to ERISA. *See* Para. 710 The Employee Retirement Income Security Act, Employer's Guide to Self-Insuring Health Benefits, 2006 WL 1983424 (Mar. 2016) ("Generally, the exception from ERISA coverage is not optional. Local government plans, for example, often use ERISA as a guide, and even submit to DOL disclosures required of ERISA plans. However, such activity still does not make those plans ERISA plans.").

Administrators of exempted plans are not able to contract themselves into ERISA liability or governance. In other words, an exempted plan does not become subject to ERISA requirements and remedies simply because the plan contains language allegedly subjecting it to ERISA. "Desire and compliance [do not] make an ERISA plan," *Hall v. Me. Mun. Emps. Health Tr.*, 93 F. Supp. 2d 73, 75 (D. Me. 2000), nor does it make a participant of an exempt plan eligible to assert remedies that are designed to protect ERISA plan participants. Absent a § 410(d) election, "a benefit plan does not choose whether to opt in or opt out of ERISA." *Hall*, 93 F. Supp. 2d at 75. Accordingly,

in the absence of an election to be covered, there is no ERISA authority to regulate either the Annuity Plan or impose ERISA remedies on Defendants.

In a private letter ruling ("PLR"), the IRS addressed the question of whether voluntary compliance with ERISA requirements operates as an election for a plan to be subject to ERISA.[6] Specifically, the taxpayer sought clarification on whether the administration and operation of a church plan as if it is subject to ERISA operates as the requisite election under § 410(d). I.R.S. P.L.R. 201826009 (June 29, 2018) [hereinafter "2018 PLR"]. The IRS found that there are two—and only two—ways a plan administrator may make an election to become governed by ERISA, and it is not an "agreement" as Plaintiffs assert. *See* Am. Compl. ¶ 8. The 2018 PLR notes that "the plan administrator of the church plan may make [an] election by attaching an affirmative statement to either (i) the plan's annual return required under § 6058(a) . . . or (ii) a written request for a determination letter relating to the qualification of the plan." The 2018 PLR further notes that "Section 1.410(d)-1 does not provide for an alternative form of election. Accordingly, we conclude that the administration and operation of [the plan] . . . as if it were subject to . . . ERISA, does not constitute an election under § 410(d)." *Id.* (emphasis added).

The IRS PLR reaffirmed the plain language of ERISA—that the only way for a church plan to become subject to ERISA is for the plan sponsor to make the election identified in § 410(d).

---

[6] The courts have noted that "IRS private letter rulings, while not binding, are entitled to deference." *Overall v. Ascension*, 23 F. Supp. 3d 816, 827 (E.D. Mich. 2014) (citing *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 (2001) (noting IRS ruling reflecting agency's longstanding interpretation that is reasonable "attracts substantial judicial deference")); *see also Costantino v. TRW, Inc.*, 13 F.3d 969, 981 (6th Cir.1994) (noting IRS rulings can be "persuasive authority"). The Eastern District of Michigan noted that IRS PLRs are especially persuasive "where the IRS rulings, in the Court's view, are consistent with the text of the statute." *Overall*, 23 F. Supp. 3d at 827.

There are no alternatives. Even if a plan is operated "as if" it is an ERISA plan, it is not, and the causes of action and remedies in ERISA are not available to participants of exempt plans.

In short, ERISA does not apply to the Plan, Plaintiffs do not allege that an appropriate election was made, and Plaintiffs are not parties entitled to bring ERISA causes of action or seek ERISA remedies.

### i. Defendants AMEC General Board and AMEC Council of Bishops, as Subdivisions of AMEC, Should be Dismissed Entirely.

The Court should dismiss Defendants AMEC General Board and AMEC Council of Bishops from the pending action because these Defendants are one and the same as AMEC itself. Any judgment rendered against AMEC General Board and AMEC Council of Bishops would be treated by AMEC as if the judgment were made against AMEC at large.

Federal Rule of Civil Procedure 17(b)(3) provides that capacity to be sued for parties other than individuals or corporations is determined by the law of the state in which the court is located. A situation analogous to the instant case exists under Tennessee law regarding a county government's capacity to be sued. While Tennessee Code Annotated § 5-1-105 permits lawsuits against a county government, courts in this Circuit have held that when a plaintiff files suit against a department within a county government, such suits are brought against the county itself because the individual departments lack capacity to be sued. *See, e.g. Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (holding that a county jail is a department of the county, which is the appropriate entity to sue); *McCord v. Harderman Cty. Gov't*, No. 1:20-CV-1109-STA-CGC, 2020 WL 5800752, at *3 (W.D. Tenn. Sept. 28, 2020) (finding that the county's ambulance service was a department of the county and was not a suable entity).

Here, Plaintiffs brought suit against AMEC and two AMEC subdivisions—AMEC Council of Bishops and AMEC General Board. The two subdivisions of AMEC lack capacity to be sued.

Moreover, any judgment against AMEC Council of Bishops and AMEC General Board would be rendered against AMEC. Thus, a suit against AMEC General Board and AMEC Council of Bishops is essentially the same as a suit against AMEC itself. Since AMEC is a defendant in this lawsuit, the Court should dismiss AMEC General Board and AMEC Council of Bishops from this action entirely.

## CONCLUSION

Based on the foregoing, AMEC Defendants respectfully request that Counts II, V, VI, VII, VIII, IX, and Alternative Counts XI–XVII of Plaintiffs' First Amended Complaint be dismissed as to the AMEC Defendants, and that AMEC General Board and AMEC Council of Bishops be dismissed, with prejudice.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

*s/ Bruce A. McMullen*
Bruce A. McMullen (TN Bar No. 18216)
Mary Wu Tullis (TN Bar No. 31339)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone:    901.526.2000
Fax:    901.577.2303
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com

***Counsel for AMEC Defendants***

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing has been served upon all counsel of record via the Court's electronic filing system on the 19th day of September, 2022.

                                                 s/ *Bruce A. McMullen*