## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION, | ) ) ) ) | **Lead Case No.** **1:22–md–03035–STA–jay** **ALL CASES** |

---

**ORDER DENYING AMEC'S MOTION TO DISMISS SYMETRA LIFE INSURANCE COMPANY'S CROSS-CLAIM (ECF NO. 230)**
**ORDER GRANTING IN PART, DENYING IN PART SYMETRA LIFE'S MOTION TO STAY (ECF NO. 259)**
**ORDER GRANTING SYMETRA LIFE'S MOTION TO STAY AMEC'S CROSS-CLAIMS (ECF NO. 270)**

---

This multidistrict litigation concerns losses to a non-ERISA retirement Plan established by the African Methodist Episcopal Church for its clergy and employees.  Plaintiffs are current or retired clergy of the church and allege a number of claims under Tennessee law against the denomination, church officials, third-party service providers to the Plan, and other alleged tortfeasors.  Before the Court are a series of Motions concerning an arbitration agreement between the Church and one of those third-party providers, Symetra Life Insurance Company.  AMEC has filed a Motion to Dismiss Symetra Life Insurance Company's Cross-Claims (ECF No. 230) against the Church, arguing that the crossclaims are subject to arbitration.  Symetra Life[1] responded by initiating arbitration and then filing two different motions of its own: a Motion to Stay all of the proceedings on all claims against it (ECF No. 259) as well as a separate Motion to Stay just AMEC's cross-claims against it (ECF No. 270).  The parties have fully briefed the issues, and the Court held a motion hearing with counsel for the parties on October 5, 2023.  The parties filed a

---

[1] In previous orders the Court has referred to Symetra Life simply as "Symetra."  AMEC's Amended Answer, Cross-Claim, and Third-Party Claim (ECF No. 256) alleges cross-claims against Symetra Life Insurance Company and third-party claims against Symetra Financial Corporation.  All references to "Symetra Life" or "Symetra" in this order are references to Symetra Life Insurance Company unless otherwise noted.

round of supplemental briefs.  For the reasons set forth below, AMEC's Motion to Dismiss is **DENIED**.  Symetra Life's Motion to Stay all proceedings is **GRANTED in part, DENIED in part**, and its Motion to Stay AMEC's Cross-Claims against it is **GRANTED**.

<u>**BACKGROUND**</u>

## I.     Procedural History

In early 2022, Plaintiffs filed six civil actions against AMEC and others across several United States District Courts: *Rev. Pearce Ewing v. African Methodist Episcopal Church et al.*, No. 2:22–cv–02136–JTF–atc (W.D. Tenn. Mar. 4, 2022); *Charles R. Jackson v. Newport Group, Inc. et al.*, No. 2:22–cv–02174–JTF–atc (W.D. Tenn. Mar. 22, 2022); *Rev. Cedric V. Alexander v. Rev. Dr. Jerome Harris et al.*, No. 8:22–cv–00707–PJM (D. Md. Mar. 22, 2022); *Phillip Russ, IV et al. v. Newport Group, Inc.*, No. 3:22–cv– 00375–BJD–LLL (M.D. Fla. Mar. 31, 2022); *Rev. Derrell Wade et al. v. Newport Group et al.*, No. 3:22–cv–00179–DN (E.D. Va. Apr. 1, 2022); *Rev. A. Offord Carmichael, Jr. et al. v. Rev. Dr. Jerome Harris et al.*, No. 3:22–cv–00386–UA– JLW (M.D.N.C. May 19, 2022).[2]

Plaintiff Rev. Pearce Ewing moved under 28 U.S.C. § 1407 to consolidate all proceedings in the Western District of Tennessee.  On June 2, 2022, the Panel on Multidistrict Litigation transferred the civil actions to this Court, finding that consolidation would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." MDL Transfer Order 1, June 2, 2022 (ECF No. 1).  The Panel further found that consolidation in this

---

[2] The Complaints in *Ewing*, *Jackson*, and *Russ* each named  Symetra Financial Corporation and Symetra Life as Defendants.  *Carmichael* and *Alexander* named only Symetra Life; *Wade* named only Symetra Financial.  Once the cases went to MDL and were assigned to this Court for all further multidistrict proceedings, Plaintiffs amended their pleadings to allege all claims in a single pleading against all Defendants, the Consolidated Amended Complaint – Class Action (ECF No. 74).  The Amended Complaint did not name Symetra Financial as a Defendant.

District was appropriate since the AMEC Department of Retirement Services has its principal place of business in this District and the Rev. Dr. Jerome V. Harris, the former trustee of the Plan, resides in this District. *Id.* at 2.

On June 22, 2022, the Court entered a Practice and Procedure order to govern all further proceedings. *See* Practice & Proc. Order, June 22, 2022 (ECF No. 8). The Court held its initial case management conference with counsel for the parties on August 4, 2022, and approved the case management deadlines proposed by the parties. On August 25, 2022, the Court entered a case management order (ECF No. 78), setting forth the deadlines discussed at the initial conference. Among other things, the Court gave the parties until August 30, 2023, to complete all fact discovery, and February 9, 2024, to complete expert discovery. The Court also set March 26, 2024, as Plaintiffs' deadline to file a motion for class certification and the deadline for all parties to file dispositive motions and *Daubert* motions. The Court has continued to hold status conferences with counsel for the parties approximately every 60 days.

## II.   Factual Allegations

On August 21, 2022, Plaintiffs filed their Consolidated Amended Complaint – Class Action (ECF No. 74) ("Amended Complaint"). According to Plaintiffs' Amended Complaint, Plaintiffs and the members of the putative class are ministers, bishops, officers, elders, and other employees (and their respective beneficiaries) of AMEC or AMEC-related educational institutions or programs who have (i) lost money that was (or should have been) invested as part of the Church's retirement plan, (ii) had diminished investment returns because of mismanagement of the retirement plan, or (iii) found that they were never actually made participants in the plan as they were promised and should have been. Am. Compl. ¶ 4. Plaintiffs seek to represent a class defined as

3

All persons residing in the United States who are participants in the African Methodist Episcopal Church Ministerial Retirement Annuity Plan, all persons residing in the United States who are beneficiaries entitled to benefits as of January 1, 2021, under the African Methodist Episcopal Church Ministerial Retirement Annuity Plan, and all persons residing in the United States who are qualified employees of the AMEC who were not, but should have been, made participants or beneficiaries in the African Methodist Episcopal Church Ministerial Retirement Annuity Plan.[3]

*Id.* ¶ 292. The class consists of more than 5,000 members, though the precise number is not currently known. (*Id.* ¶ 297.)

Plaintiffs allege that the Rev. Dr. Jerome V. Harris, the Executive Director of the AMEC Department of Retirement Services and the Trustee for the church's retirement Plan, embarked on a long-running conspiracy to embezzle Plan funds and defraud Plaintiffs. *Id.* ¶ 153. Dr. Harris invested $49.5 million in Plan assets with Symetra Life in 2001.[4] Over the next 20 years, Dr. Harris directed Symetra Life to transfer Plan assets from the Plan's Symetra Life annuities account to business organizations controlled by Dr. Harris. As part of his scheme to misappropriate Plan assets, Dr. Harris used the companies under his control to funnel between $30 million and $40 million in assets into high-risk private equity funds, including Motorskill Venture Group; Motorskill Ventures 1, L.P.; Motorskill Asia Venture Group; and Motorskill Asia Ventures 1, L.P. (collectively, the "Motorskill entities"). *Id.* ¶¶ 75, 178. By 2021, Dr. Harris' investments in the Motorskill entities were virtually worthless. *Id.* ¶ 189. When Dr. Harris retired in 2021, the Church reported that the value of the Plan's assets was nearly $130 million. *Id.* ¶ 234. After church leaders

---

[3] The Amended Complaint excludes from the Class "[a]ny Defendant employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Plan, and their beneficiaries . . . ." (Am. Compl. ¶ 292.)

[4] To be precise, the Amended Complaint alleges the AMEC General Board accepted Dr. Harris' recommendation to move the plan's annuity funds to Safeco Insurance. *Id.* ¶ 143. Safeco Insurance rebranded as Symetra Life Insurance Company in approximately 2005. *Id.* ¶ 145.

discovered Dr. Harris's scheme and conducted an audit of the Plan's investments, the investigation could only account for approximately $38 million of Plan assets: $36.9 million invested with Symetra Life and real property in Key Marco Island, Florida, valued at approximately $1 million. *Id.* ¶ 253. In other words, between $80 million and $90 million in assets could not be accounted for. *Id.* ¶ 242.

From these and other factual premises, the Amended Complaint alleged the following causes of action under Tennessee law against various defendants: breach of fiduciary duty, violation of the Tennessee Uniform Trust Code for breach of trust and misappropriation of trust funds, negligence, conversion, fraudulent concealment, fraudulent misrepresentation, breach of contract, promissory estoppel, outrage, and civil conspiracy.[5] After AMEC, Symetra Life, and another third-party service provider Newport Group, Inc. filed motions to dismiss Plaintiffs' Amended Complaint, the Court held that Plaintiffs had stated plausible claims for breach of fiduciary duty and negligence against Newport and Symetra Life. The Amended Complaint, however, had failed to state plausible claims for violations of ERISA, breach of trust and misappropriation of trust assets in violation of the Tennessee Uniform Trust Code against AMEC, Symetra Life, or Newport; fraudulent concealment and fraudulent misrepresentation against the AMEC Defendants and Newport; breach of contract and promissory estoppel claims against AMEC; or the intentional infliction of emotional distress against AMEC. *See* Order on Mots. to Dismiss Consolidated Am. Compl. – Class Action, Mar. 17, 2023 (ECF No. 197).

---

[5] The Amended Complaint also alleged a number of claims in the alternative for violations of ERISA but only in the event the Court determined that ERISA applied. In its ruling on Defendants' motions to dismiss the Amended Complaint, the Court held that AMEC had not formally elected to make its plan an ERISA plan, meaning ERISA did not govern the plan. Therefore, the Court dismissed Plaintiffs' ERISA claims.

Following the Court's ruling on the plausibility of the allegations in Plaintiffs' Amended Complaint, AMEC and Symetra Life answered the Amended Complaint and also asserted their own cross-claims against each other. The pleadings most relevant to the Motions now before the Court are AMEC's Partial Answer and Cross-Complaint (ECF No. 116) and Amended Answer, Cross-Complaint, and Third-Party Complaint (ECF No. 256), and Symetra Life's Answer and Cross-Complaint (ECF No. 214). AMEC seeks to hold Symetra Life liable for negligent misrepresentation, breach of fiduciary duty, simple negligence, and punitive damages. Symetra Life has the following cross-claims against AMEC: breach of a 2001 annuity contract, a 2007 annuity contract, the Guaranteed Interest Contracts ("GICs"), and a 2003 Recordkeeping Services Agreement; a claim for contractual indemnification under the 2003 Recordkeeping Services Agreement for all losses, damages, liabilities, obligations, and expenses incurred by Symetra Life as a result of the claims brought against it by Plaintiffs and AMEC in this action; common law indemnification; contribution from AMEC due to AMEC's proportionate share of fault; negligent misrepresentations by AMEC that Symetra Life's performance of services would not make it a fiduciary of the Plan, that Dr. Harris as Plan Trustee had full authority to act on behalf of AMEC and the Plan, and that Symetra Life could rely on and would not be liable for failing to question or challenge disbursement orders it received from Dr. Harris.

## III.    Arbitration Motions Regarding Claims Against Symetra Life

AMEC has filed a Motion to Dismiss Symetra Life's cross-claims against the Church for lack of subject-matter jurisdiction because Symetra Life's claims are covered by an arbitration agreement. The arbitration agreement is found in the 2003 Recordkeeping Services Agreement ("2003 RSA"), one of the contracts between the Church and Symetra Life which Symetra alleges the Church has breached. The arbitration agreement reads as follows:

6

**10. Enforcement of Rights.**

Any controversy or claim arising out of or relating to this Agreement or the validity, interpretation or breach thereof, which is not settled by agreement among the parties, shall be settled exclusively by arbitration in Seattle, Washington, in accordance with the rules of the American Arbitration Association then in effect.

The arbitrators' expenses and fees shall be borne equally by the parties. In the event that either party shall be required to take legal action in order to enforce its rights under this Agreement, the prevailing party in such action or proceeding shall be entitled to recover from the other party costs and reasonable attorneys' fees.

AMEC does not actually concede that the 2003 RSA is enforceable or that the RSA somehow applies to the cross-claims alleged by Symetra Life against the AMEC.  AMEC argues that if Symetra Life alleges a breach of contract claim based on the 2003 RSA, then Symetra Life must also abide by the RSA's arbitration provision.  AMEC does not specifically request a court order compelling the parties to arbitrate their cross-claims.  Rather the Church contends that dismissal of Symetra Life's cross-claims is required because the binding arbitration clause requires the parties to submit their dispute to arbitration in Seattle, Washington.  So the Church argues the Court lacks the authority to compel AMEC to arbitration outside of this judicial District and should therefore dismiss Symetra Life's cross-claims.

Symetra Life has responded to AMEC's Motion to Dismiss.   Symetra Life agrees that all of its cross-claims (both contractual and non-contractual claims) fall within the scope of the arbitration provision.  Symetra Life therefore commenced arbitration on July 26, 2023.  The actual scope of the arbitration provision is for the arbitrator, not the Court, to decide in the first instance.  In Symetra Life's view, the Church has necessarily admitted the validity of the 2003 RSA by seeking to enforce the agreement's arbitration clause.  The only real dispute between AMEC and Symetra Life concerns whether a stay or dismissal of Symetra Life's cross-claims is the appropriate outcome.  Symetra Life argues that a stay is required based on the plain language of 9

7

U.S.C. § 3 and the Sixth Circuit's decision in *Arabian Motors Group W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021). According Symetra Life's reading of *Arabian Motors*, a stay is mandatory under the Federal Arbitration Act when one of the parties requests a stay pending arbitration. Symetra Life also argues that the Court has no reason to decide whether it has jurisdiction to compel AMEC to arbitration because the arbitration proceeding is now open.

Because a stay is the proper result, Symetra Life argues the only issue for the Court to decide is the scope of the stay. A stay of all claims against Symetra Life is arguably required by the FAA. Section 3 states that a court "shall stay the trial of the action." In Symetra Life's view, this means all of the proceedings involving Symetra Life. Even if a stay of all claims against Symetra Life is not mandatory, the Court has discretion to stay them. Without a stay of all proceedings against Symetra Life, there is a risk that the parties will litigate some of the same issues in the MDL and in arbitration and could receive inconsistent rulings. And even if the Court does not stay Plaintiffs' claims against Symetra Life, the Court should stay AMEC's cross-claims against Symetra Life. AMEC alleges that Symetra Life breached its fiduciary duty to the Church; however, the 2003 RSA in § 5(a) expressly stated that Symetra Life "is not and shall not become a Plan fiduciary." The Church's cross-claims for negligent misrepresentation and negligence are also bound up with the 2003 RSA's covenants that Symetra Life was contractually entitled to rely on the accuracy of information furnished by Dr. Harris and had no independent duty to verify the information. At the end of the day, an arbitrator must decide the threshold question of whether the Church's cross-claims fall within the scope of the 2003 RSA.

As part of its reply, AMEC "does not admit or concede that the 2003 Agreement is valid or enforceable, nor does it believe that the Agreement had anything whatsoever to do with the present litigation before this Court." The Church describes the 2003 RSA as "unexecuted,"

specifically in that no one ever signed the document on behalf of Symetra Life.  The Church maintains that dismissal of Symetra Life's cross-claims remains an option to be used at the discretion of the Court.  According to some cases, a court may dismiss claims where all of the claims are arbitrable.  Once the parties complete arbitration in this case, there will be nothing for the Court to do other than execute a possible arbitration judgment.  All of Symetra Life's cross-claims are arbitrable, and so dismissal of the claims is appropriate.  However, if the Court does stay Symetra Life's cross-claims, the Court should not stay the Church's cross-claims against Symetra Life.  The Church's cross-claims are Tennessee common law claims.  Even if the claims may arise under some agreement between AMEC and Symetra Life, they do not arise under the 2003 RSA.  Finally, the Church argues that Symetra Life's delay in initiating arbitration should constitute a waiver of its contractual right to arbitration.

For its part, Symetra Life has filed two different Motions to Stay, the first seeking a stay of all proceedings involving Symetra Life (ECF No. 259) and the second requesting a stay just of the Church's cross-claims against Symetra Life (ECF No. 270).   Symetra Life's Motion to Stay all proceedings is largely identical to its response in opposition to AMEC's Motion to Dismiss. The Court should stay, not dismiss, the proceedings on Symetra Life's cross-claims as well as the Church's cross-claims against Symetra Life and all of the other claims against Symetra Life.  The second Motion to Stay presents a narrower argument that the Court should at the very least stay AMEC's cross-claims against Symetra Life.

The Church opposes a limited stay of the proceedings just as to its cross-claims against Symetra Life for additional reasons.  The 2003 RSA did not actually revise or update the 2001 RSA, which was the Church's original contract with Symetra Life's predecessor Safeco Insurance. When Dr. Harris returned the 2003 RSA to Symetra Life, he attached a cover letter to the 2003

RSA and requested to open a money market account separate from the Plan's annuity account, calling into question whether the 2003 RSA is even relevant to the dispute over the Plan's annuity business with Symetra Life. The Church has also cited evidence that Symetra Life's correspondence with the Plan, as recently as 2022, referred to the 2001 RSA, not the 2003 RSA. Inasmuch as the Church's cross-claims are contractual in nature, the key contracts were the 2001 RSA and a 2007 annuity contract, not the 2003 RSA.

Plaintiffs have filed their own response in opposition to Symetra Life's request for a stay of all proceedings against it. As a threshold matter and for the same reasons cited by AMEC, Plaintiffs question whether the 2003 RSA is even valid and enforceable against the Church. No one ever signed the 2003 RSA on behalf of Symetra Life. Furthermore, all of the factors to be considered on the question of a stay of all claims against Symetra Life weigh against such a stay. There is no reason to stay non-arbitrable claims against Symetra Life. Plaintiffs have two claims remaining against Symetra Life: breach of fiduciary duty and negligence. Nothing in the 2003 RSA brings Plaintiff's claims within the scope of the arbitration agreement between the Church and Symetra Life. Plaintiffs' claims concern duties Symetra Life owed to Plaintiffs, not AMEC. Symetra Life's cross-claims seek indemnification and contribution from the Church. There is no legal or factual overlap between Plaintiffs' claims against Symetra Life and the cross-claims between the Church and Symetra Life. Symetra Life has not identified any factual issue in common among the claims. The arbitrable claims between the Church and Symetra Life do not predominate over the non-arbitrable claims between the rest of the parties. Plaintiffs believe then that allowing them to pursue their claims against Symetra Life is the most efficient use of judicial resources because it focuses the litigation on deciding Symetra Life's liability to Plaintiffs before determining the rights of the Church and Symetra Life to receive indemnity from each other.

Finally, Plaintiffs argue that a stay of all proceedings against Symetra Life is not warranted because Symetra waived its right to arbitration. Symetra Life has litigated its defenses in motion practice and participated in discovery without ever invoking the arbitration clause. While Plaintiffs would suffer great prejudice if the Court stayed their claims against Symetra Life, Symetra Life would not suffer prejudice at all by continuing to litigate against Plaintiffs.

Symetra Life has addressed the arguments raised by AMEC and Plaintiffs in opposition to a wider stay of all proceedings. Symetra Life emphasizes that questions about the validity of the 2003 RSA are subject to arbitration, not a judicial determination. In a larger sense, the Church's cross-claims against Symetra Life are essentially the other side of the coin of Symetra Life's cross-claims: did Symetra Life owe the Church any fiduciary duty or a common law duty related to the information the plan provided to Symetra and Symetra to the plan? A stay of those claims is clearly within the scope of the arbitration agreement. And Plaintiffs' claims are identical to and derivative of AMEC's claims against Symetra. Both sides allege that Symetra Life owed the Plan fiduciary and common law duties and breached its duties. On the question of waiver, the record belies Plaintiffs' contention that Symetra Life somehow delayed raising the arbitration issue. AMEC filed an Amended Cross-Claim against Symetra Life (ECF No. 256) on July 25, 2023, and Symetra Life filed its Motion to Stay (ECF No. 259) three days later.

At the motion hearing held October 5, 2023, the Court received additional argument from counsel. Counsel for AMEC stated in his presentation that the Church had no evidence the 2003 RSA had ever taken effect, in part because there was no evidence the Plan ever deposited funds into the money market account established by the RSA. In rebuttal to that claim, Symetra Life has filed a supplemental brief with supporting exhibits (ECF No. 306). Symetra Life has produced a letter dated June 30, 2003, in which Dr. Harris directed Safeco to wire $1.7 million being held in

11

the money market fund. According to Symetra Life, the letter confirms that the money market account was funded. Symetra Life also points to a newly discovered 2008 Recordkeeping Services Agreement between AMEC and Symetra Life (not Safeco) which contained a largely identical arbitration clause. Symetra Life has produced statements showing that the Plan purchased Symetra Life mutual funds pursuant to the 2008 RSA, further demonstrating that the agreement bound AMEC and Symetra Life. Plaintiffs (ECF No. 314) and AMEC (ECF No. 315) have filed a response to Symetra Life's supplemental brief.

## STANDARD OF REVIEW

The Federal Arbitration Act ("the FAA") makes arbitration clauses in commercial contracts "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "manifest[s] a liberal federal policy favoring arbitration agreements." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 762, 151 L.Ed.2d 755 (2002) (citations omitted). The FAA was enacted with the purpose "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *see also Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892 (Tenn. 2006).

The FAA specifies the role of courts in cases where a dispute between the parties is subject to arbitration and "establishes procedures by which federal courts implement § 2's substantive rule." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). In order to ensure that arbitration agreements are enforced, "[t]he FAA provides two means of invoking arbitration." *Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir.

2021).  First, under § 3 of the FAA, a court must stay "the trial of the action" pending arbitration but only on motion of "one of the parties" and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement."  9 U.S.C. § 3; *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021).  Second, § 4 of the FAA authorizes courts to order or compel parties to arbitration where two or more parties have previously agreed to arbitration and one party fails or refuses to abide by the agreement.  9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed . . . . ");  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (holding that when a party files a motion to compel arbitration, a court "must follow the procedure set forth in section 4 of the FAA").

Beyond procedural devices to pause court proceedings or transfer a dispute from a judge to an arbitrator, the FAA also grants courts the power to appoint arbitrators when the parties have not or cannot agree on the selection of an arbitrator (§ 5), to enforce summons issued by arbitrators (§ 6), to confirm an arbitrator's award (§ 9), and to vacate or correct an arbitrator's award under limited circumstances (§§ 10, 11).

The parties' Motions regarding arbitration implicate two different standards of review. AMEC has moved to dismiss Symetra Life's arbitrable cross-claims against it for lack of subject-matter jurisdiction.  Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for the dismissal of an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). Separate and apart from Rule 12(b)(1), "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Akno 1010 Mkt.*

*Street St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)).  The United States Court of Appeals for the Sixth Circuit has held that "where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4."  *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (construing 9 U.S.C. § 4 to require arbitration to take place "within the district in which the petition for an order directing such arbitration is filed").

Symetra Life does not seek an order compelling the parties to arbitrate, only a stay of the proceedings while they submit their dispute to arbitration.  Section 3 of the FAA governs Symetra Life's Motions to Stay and states as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The inquiry for the court when a party moves for a stay under § 3 is one of "very limited scope."  *Stokes v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 523 F.2d 433, 436–37 (6th Cir. 1975); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.").

## ANALYSIS

Both AMEC and Symetra Life argue that the 2003 RSA contains an arbitration agreement

14

and requires arbitration on some or all of their dispute. The parties disagree over what claims or issues should go to arbitration and what the Court should do with claims against Symetra Life, both AMEC's and Plaintiffs', in the meantime. AMEC argues that the parties' 2003 RSA binds Symetra Life to arbitrate its cross-claims against the Church but should not require the Church to arbitrate its cross-claims against Symetra Life. Because Symetra Life alleges cross-claims arising out of the 2003 RSA and the agreement requires arbitration to occur outside of the Western District of Tennessee in Seattle, Washington, AMEC seeks the dismissal of Symetra Life's cross-claims for lack of subject-matter jurisdiction under Rule 12(b)(1). For its part Symetra Life requests a stay of the proceedings on its cross-claims as well as a stay of any claims made against it, both AMEC's cross-claims and Plaintiffs' claims, pending arbitration, all pursuant to § 3 of the FAA. Before the Court can decide what form of relief is proper, the Court must first consider the issue of whether the parties have an agreement to arbitrate and which decisionmaker will adjudicate the issue, the Court or an arbitrator.

## I. Contract Formation of the 2003 RSA

The threshold issue then is whether AMEC and Symetra Life have agreed to arbitrate any or all of the issues raised in their cross-claims against each other. As a general proposition, courts must make the initial determination of whether the parties formed a contract to arbitrate their dispute, particularly where a party asks the court to compel the other party to arbitration under § 4 of the FAA. Because arbitration is "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), "[c]ourts . . . must decide whether the parties actually entered into an arbitration agreement before sending the dispute to arbitration." *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 377 (6th Cir. 2021) (collecting cases). "[O]ur precedents hold that courts should order

arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (emphasis in original).

Nevertheless, the FAA permits the parties to a commercial agreement to contract around this general rule and reserve the question of contract formation and other issues of contract validity for arbitration. Some arbitration agreements contain an ancillary agreement, a so-called delegation clause, to delegate certain "gateway" questions of arbitrability, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and have them decided by an arbitrator and not a court. *Jackson*, 561 U.S. at 68–69. For purposes of the FAA, "[a] valid delegation clause precludes courts from resolving any threshold arbitrability disputes . . . .'" *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ---, 139 S. Ct. 524, 529, 202 L.Ed.2d 480 (2019)). Courts are required to enforce a delegation clause, though a party to an agreement with a delegation clause may still contest the validity or enforceability of the delegation clause itself. When a party raises a challenge to an arbitration agreement with a delegation clause, the party must "show that *the basis of their challenge* is directed specifically to the delegation provision." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (citing *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886 (6th Cir. 2021)) (emphasis in original). Otherwise, an arbitrator must settle any challenge to the arbitrability of the parties' dispute. "Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d at 505 (citing *Jackson*, 561 U.S. at 72).

One more point bears emphasis here.  The general rule about courts deciding matters of contract formation is subject to another caveat where the arbitration agreement contains a delegation clause and a party who did <u>not</u> sign the agreement seeks to enforce it against a party who did.  The Sixth Circuit has held that "a nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability" and was therefore a matter for an arbitrator and not a judge when the arbitration agreement delegated questions of arbitrability to the arbitrator. *Swiger*, 989 F.3d at 507; *accord Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020) ("This court has treated the non-signatory question differently when the non-signatory *opposes* arbitration . . . . In that context, our court has said, the question goes to the very 'existence of a valid arbitration agreement' and thus the court must itself resolve the question even if the agreement incorporates the AAA Rules.") (citing *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385 (6th Cir. 2020)).

Applying this authority here, the Court holds that the question of contract formation is a question of arbitrability the parties have delegated to an arbitrator.  The 2003 RSA contains an arbitration agreement and a delegation clause with the following language: "Any controversy or claim arising out of or relating to this Agreement or the validity, interpretation or breach thereof, which is not settled by agreement among the parties, shall be settled exclusively by arbitration in Seattle, Washington, in accordance with the rules of the American Arbitration Association then in effect."  Giving the terms of this provision their ordinary and natural meanings, the parties agreed to submit any disagreement "arising out of or relating to" the 2003 RSA or the "validity" or the "interpretation" of the agreement to an arbitrator, not the Court.

The Sixth Circuit has construed similar language to constitute a delegation clause.  *Swiger*, 989 F.3d at 506 ("Here, Swiger's agreement requires her to arbitrate 'any issue concerning the

validity, enforceability, or scope of this . . . Agreement to Arbitrate.' This constitutes a delegation clause, clearly and unmistakably showing that the parties agreed to arbitrate issues of arbitrability."). Moreover, the 2003 RSA's arbitration clause is "clear and unmistakable" proof of an intent to have an arbitrator decide matters of arbitrability. The Supreme Court has held that for matters of arbitrability, a court must find "clear and unmistakable" evidence that the parties agreed to reserve those issues for arbitration. *Blanton*, 962 F.3d at 844 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). This heightened standard "reverses the usual presumption in favor of arbitration when it comes to questions of arbitrability." *Id.* (citing *Jackson*, 561 U.S. at 69 n.1 and *Kaplan*, 514 U.S. at 944). The "heightened" standard is met here. The 2003 RSA's delegation clause stipulates that an arbitrator would decide any covered dispute "in accordance with" the current rules of the AAA. The Sixth Circuit has held that "the incorporation of the AAA Rules (or similarly worded arbitral rules)" qualifies as "clear and unmistakable" evidence of intent to arbitrate matters of "arbitrability." *Id.* at 846 (collecting cases).

All of this shows the parties agreed to delegate gateway issues of arbitrability to an arbitrator. Both parties have invoked the 2003 RSA's arbitration clause, and no party has specifically challenged the delegation clause contained within the arbitration clause. The parties agree that the question of whether the Church and Symetra Life had a valid agreement is itself a matter to be decided in arbitration. AMEC Mot. to Dismiss 8–9 (ECF No. 230-1); Symetra Life's Resp. in Opp'n 6–7 (ECF No. 258) ("AMEC argues the arbitration clause delegates all questions of arbitrability. Motion at 8–9. Again, Symetra does not dispute this."). Under the circumstances, the Court "must treat the delegation provision as valid and must enforce it." *Becker*, 39 F.4th at 356 (citing *Jackson*, 561 U.S. at 72, and *In re StockX*, 19 F.4th at 886). The Court concludes then

18

that the parties have delegated gateway questions of arbitrability concerning the 2003 RSA to an

arbitrator. *New Prime Inc. v. Oliveira*, 586 U.S. ---, 139 S.Ct. 532, 538, 202 L.Ed.2d 536 (2019)

(citing *Jackson*, 561 U.S. at 68–69) ("A delegation clause gives an arbitrator authority to decide

even the initial question whether the parties' dispute is subject to arbitration.").

Although no party contests the delegation clause, AMEC and Plaintiffs have questioned

whether Symetra Life ever signed the 2003 RSA and therefore agreed to be bound by it. As part

of its briefing on the issues related to arbitration, the Church has taken somewhat incongruent

positions on whether the 2003 RSA is a binding agreement. On one hand, the Church seeks the

dismissal of Symetra Life's cross-claims based on the arbitration clause in the 2003 RSA and the

arbitrability of Symetra's claims against the Church. As part of its opposition to a stay of the

proceedings, however, AMEC points out Symetra Life never executed the 2003 RSA. Plaintiffs

have likewise called into doubt whether the 2003 RSA is a binding contract because Symetra Life

never signed it. The parties have also supplemented their positions with additional documentary

proof and argument on the enforceability of any contract between the Church and Symetra Life

containing an agreement to arbitrate based on the parties' performance under a number of written

agreements.

Assuming for the sake of argument Symetra Life was a non-signatory to the 2003 RSA,

the Court holds that Symetra Life's "ability to enforce" the agreement is itself "a question of

arbitrability" for an arbitrator to decide pursuant to the 2003 RSA and its delegation clause.

*Swiger*, 989 F.3d at 507. The fact is that the 2003 RSA was a form contract proposed by Symetra

Life's predecessor in interest. Dr. Harris signed the 2003 RSA on behalf of the Church. AMEC

is now the party to invoke the arbitrability of Symetra Life's cross-claims in light of the 2003

RSA's arbitration clause. Even though Symetra Life has not produced a signed copy of the

agreement, Symetra Life seeks to avail itself of the agreement's arbitration clause and take its dispute with the Church out of the courts and into arbitration. Symetra Life has already made its Demand for Arbitration (ECF No. 259-2) with the American Arbitration Association. Unlike the typical dispute involving arbitration agreements, no party has asked the Court to compel arbitration under § 4 of the FAA, much less compel a party to arbitration who did not sign the 2003 RSA. The parties have delegated the question of whether Symetra Life can enforce the 2003 RSA and its arbitration provision to an arbitrator, an agreement the Court is bound to enforce in the absence of a specific challenge to the delegation clause found in the 2003 RSA.

Just as the Court of Appeals stressed in *Swiger*, the Court's holding about the formation of a contract is narrow, addressing not whether the parties actually had a meeting of the minds over the 2003 RSA or the arbitration agreement or even the delegation clause. The Court is simply enforcing the uncontested delegation clause and answering the question of "*who should decide* whether the parties have to arbitrate the merits.*" Id.* (quoting *Blanton*, 962 F.3d at 852) (emphasis in original). In the absence of a challenge to the 2003 RSA's delegation clause, the Court must enforce the clause and allow the parties to take their dispute over the arbitrability of their cross-claims to arbitration.[6]

## II.     Symetra Life's Motions to Stay

The next question presented is what action the Court should take now that the dispute over the arbitrability of the cross-claims will proceed to arbitration. The Sixth Circuit has construed §

---

[6] The Sixth Circuit has commented that "this issue presents a logical conundrum because even with a delegation clause, courts must determine whether a contract exists at all, and if the nonsignatories are not parties to the contract, then [they have] no agreement with [the other parties]." *Swiger*, 989 F.3d at 507 (quoting *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019)) (cleaned up).

3 of the FAA and its mandatory stay provision to apply when three conditions are met: (1) there must be an "issue referable to arbitration," (2) one of the parties must request a stay, and (3) "the party requesting the stay cannot be in default in proceeding with the arbitration." *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017). The Court holds that Symetra Life can meet all three conditions for a stay.

## A.  Issues Referable to Arbitration

In order to show a right to a mandatory stay of the proceedings under § 3 of the FAA, Symetra Life must first prove that there is an issue or dispute subject to arbitration. "A district court considering a party's motion for a stay pending arbitration must determine if the claim that the party seeks to stay involves a dispute that the parties agreed to arbitrate." *First Union Real Estate Equity and Mortg. Investments v. Crown Am. Corp.*, 23 F.3d 406, 1994 WL 151338, at *3 (6th Cir. Apr. 26, 1994) (unpublished table decision) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L.Ed.2d 444 (1985)). Generally speaking, the determination of whether a claim falls within the scope of an arbitration agreement is for the Court. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576 (6th Cir. 2003) ("District courts have the authority to decide whether an issue is within the scope of an arbitration agreement.") (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)).

The Court finds that Symetra Life has carried its burden and showed there is an issue or dispute between the Church and Symetra Life subject to arbitration. First, for reasons the Court has already discussed, any dispute over the formation of the 2003 RSA is in and of itself a question of arbitrability to be decided in arbitration. Symetra Life, a non-signatory to the 2003 RSA has invoked the arbitration clause and the arbitration clause delegates matters of arbitrability to an

arbitrator. AMEC has not specifically contested the enforceability of the delegation clause. Under the circumstances, the issue of whether the parties had an enforceable agreement is a gateway question of arbitrability to be submitted to an arbitrator. The arbitrability question is "an issue referable to arbitration" and therefore satisfies the first element of Symetra Life's request for a stay. *Hilton*, 687 F. App'x at 518.

Likewise, the determination of whether all of the cross-claims between AMEC and Symetra Life are subject to arbitration presents a question of arbitrability to be decided by an arbitrator. "Whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy are gateway arbitrability questions." *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) (quoting *Jackson*, 561 U.S. at 69). Although usually reserved "for a court to decide," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), the presence of an uncontested delegation clause requires courts to defer to an arbitrator on matters regarding the scope of the claims covered by an arbitration agreement. *Ciccio*, 2 F.4th at 583 (citing *Henry Schein*, 139 S. Ct. at 529).

Here the parties have delegated to an arbitrator the power to decide "[a]ny controversy or claim arising out of or relating to [the 2003 RSA]" including the "interpretation" of the agreement. An arbitration clause of the sort found in the 2003 RSA requiring arbitration of "any dispute arising out of" an agreement is "extremely broad." *Crown Am. Corp.*, 1994 WL 151338, at *3 (citing *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)). A dispute falls within the scope of such an agreement "if the allegations underlying the claim or its defenses involve matters covered by the agreement." *Id*. (citing *Mitsubishi Motors*, 473 U.S. at 622 n. 9, 624 n.13). A "broad arbitration clause, such as one covering *any* dispute arising out of an agreement" like the one in the 2003 RSA typically means the parties' dispute goes to arbitration,

absent "an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008) (quoting *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006)).

The parties here agree at least in part that the proper scope of claims covered by the 2003 RSA's arbitration clause is an arbitrability issue to be decided by an arbitrator instead of the Court. AMEC's Mot. to Dismiss 8 (ECF No. 230-1) (stating that "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular dispute" should go to an arbitrator); Symetra Life's Mot. to Stay 10 (ECF No. 270).[7]  As part of its argument in support of its Motion to Dismiss, AMEC contends that all of Symetra Life's cross-claims against the Church arise under the 2003 RSA's arbitration clause, a point Symetra Life does not dispute.

Even so, the parties do not agree that AMEC's cross-claims against Symetra Life fall within the scope of the 2003 RSA.  The Court concludes that the scope of claims subject to arbitration is a dispute about the correct "interpretation" of the 2003 RSA, a dispute the parties have delegated to an arbitrator.  The Sixth Circuit has held that the "proper method of analysis" to determine whether a dispute "arises out of" a contractual relationship requires analysis of whether an action between two parties "could be maintained without reference to the contract or relationship at issue." *Highlands Wellmont*, 350 F.3d at 576.  In other words, the analysis calls for an

---

[7]   The Church takes somewhat inconsistent positions on the matter.  In its Motion to Dismiss, the Church argues that "Symetra's claims against AMEC in its Cross Complaint are within the scope of the arbitration provision . . . " and therefore seeks the dismissal of *all* of Symetra Life's cross-claims so that the parties can arbitrate the claims.  AMEC's Mem. in Support 7, 10 (ECF No. 230-1).  In its opposition to Symetra Life's Motions to Stay, the Church argues that "[n]o claim other than Symetra's crossclaims based on the 2003 Agreement are subject to arbitration."  AMEC's Resp. in Opp'n 1, 2 (ECF No. 272).

"interpretation" of the contract to determine whether a dispute "arises out of" the contract. Had the 2003 RSA *not* contained a delegation clause, the Court would have "interpreted" the contract to decide the issue of whether the cross-claims between AMEC and Symetra Life "arise out of" the 2003 RSA. But because the parties have reserved or delegated the correct "interpretation" of the 2003 RSA to an arbitrator, this question of arbitrability is an issue to be decided in arbitration. And as in any case presenting questions of arbitrability, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters*, 505 F.3d at 504 (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. ---, 139 S.Ct. 1407, 1418–19, 203 L.Ed.2d 636 (2019); *Cincinnati Gas*, 706 F.2d at 160 ("[I]f the issues presented are on their face referable to arbitration under the parties' agreement, the inquiry of the court is at an end."). Therefore, the scope of claims "arising out of" the 2003 RSA is another "issue referable to arbitration" in this case. *Hilton*, 687 F. App'x at 518.

AMEC argues that the presence of an arbitration clause in the 2003 RSA does not require the arbitration of claims arising under other contracts, particularly the Church's cross-claims sounding in tort. AMEC's Cross-Claim (ECF No. 256) alleges claims against Symetra Life for negligent misrepresentation, breach of fiduciary duty, negligence, and punitive damages, all arising out of Symetra Life's performance under the contracts between the parties but without directly alleging a breach of contract. Although the Church's cross-claims sound in tort, the labels a party attaches to its claims are not necessarily dispositive of the matter. *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 222 (6th Cir. 2016) ("Real torts may be covered by arbitration provisions if the allegations underlying the tort claims 'touch matters' covered by the contract.") (citing *Mitsubishi Motors*, 473 U.S. at 624 n.13) (other citations

omitted).

AMEC also cites the fact that the parties had a number of different contracts and argues that AMEC's cross-claims do not implicate the 2003 RSA. *See* AMEC's Resp. to Suppl. Br. (ECF No. 315). The Court of Appeals has considered cases where the parties have multiple contracts and disagree over whether an arbitration clause in one agreement should apply to disputes arising out of other agreements. *Dental Assocs., P.C. v. Am. Dental Partners of Mich., LLC*, 520 F. App'x 349, 352 (6th Cir. 2013) (identifying a contract containing an arbitration clause as an "umbrella agreement governing the parties' overall relationship"); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x 482, 488 (6th Cir. 2008) ("We have held that an arbitration clause in a master or 'umbrella' agreement that creates an ongoing relationship encompasses a dispute over the terms of a later contract that was entered into as part of the relationship, even if the later contract itself lacks an arbitration clause."); *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) (examining which of several agreements "determines the scope of" the parties' agreement to arbitrate).

But AMEC has not shown why the Court should examine the other contracts and writings exchanged by the parties to arrive at an "interpretation" about the scope of the claims subject to arbitration, when the 2003 RSA delegated that question of arbitrability to an arbitrator. Each of AMEC's cross-claims against Symetra Life requires an "interpretation" of a particular provision of the 2003 RSA and perhaps other contracts the parties had. For example, AMEC alleges that Symetra Life breached its fiduciary duty to the Church. Symetra Life answers that 2003 RSA contains the following provision: Symetra "is not and shall not become a Plan fiduciary or a party to the Plan or Trust." 2003 RSA § 5(a) (ECF No. 270-1). The resolution of this dispute between AMEC and Symetra Life will necessarily require an "interpretation" of the 2003 RSA, if for no

25

other reason than to decide whether the Church's breach of fiduciary duty claim "arises out of" the 2003 RSA.  AMEC's argument does not alter the Court's conclusion that the delegation clause requires the parties to submit their dispute over gateway issues of arbitrability to arbitration.[8]

All of this suffices for purposes of § 3 of the FAA and Symetra Life's Motion to Stay to show that there are issues between the Church and Symetra Life "referable to arbitration." Therefore, the Court finds that Symetra Life has satisfied this element for a § 3 stay of the proceedings on the cross-claims between the Church and Symetra Life.

**B.  Symetra Life's Request for Stay**

The second condition for a stay under § 3 of the FAA is satisfied when a party takes the procedural step of requesting a stay of the proceedings.  Symetra Life has filed separate Motions to Stay the case until arbitration is complete.  The Court finds that Symetra Life's request satisfies this condition.  The Court pauses here to address AMEC's Motion to Dismiss and its request not for a stay but for the dismissal of Symetra Life's arbitrable claims.  AMEC contends that dismissal is the proper course of action because the Court lacks subject-matter jurisdiction to compel the parties to arbitrate in another forum.  Symetra Life answers that a stay of the proceedings is required because Symetra Life has now demanded arbitration (and in the correct forum) and seeks the stay under § 3 of the FAA, not an order compelling arbitration under § 4.  AMEC argues that the Court nevertheless retains a modicum of discretion to dismiss arbitrable claims in lieu of

---

[8]  It is also worth noting the parties have agreed that their arbitrable disputes would be decided under "the rules of the American Arbitration Association then in effect."  Rule 7 of the Rules of the AAA's Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  AAA R.7; *see also Blanton*, 962 F.3d at 845 ("The Supreme Court has itself said that the AAA Rules 'provide that arbitrators have the power to resolve arbitrability questions.'") (quoting *Henry Schein*, 139 S. Ct. at 528).  By incorporating this rule into their agreement, the parties agreed that an arbitrator could decide the "scope" of their agreement to arbitrate.

staying the proceedings and should exercise its discretion and dismiss the arbitrable claims outright.

The question presented in AMEC's Motion to Dismiss then is whether dismissal of the arbitrable claim(s) or merely a stay of the proceedings pending the outcome of the arbitration is required.  The Sixth Circuit has construed § 3 of the FAA to include "a mandatory obligation" to stay the proceedings when one party requests a stay. *Arabian Motors*, 19 F.4th at 941.  Limited discretion to dismiss may exist under specific circumstances, though there is caselaw to the contrary. *Id*. at 942 (recognizing the possibility of "situations in which a dismissal remains permissible"); *Hilton*, 687 F. App'x at 519 (holding "a dismissal of claims without prejudice is permitted" where all claims in the case are subject to arbitration); *but see Southard*, 7 F.4th at 453 ("[T]he FAA does not provide for dismissal as a remedy."); *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021) ("But this [Rule 12(b)(6)] motion seeks a remedy (dismissal) that the Federal Arbitration Act does not provide.") (both citing *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 983 F.3d 885, 887–88 (6th Cir. 2020)).  In any event, when a party to an arbitration agreement requests a stay of the judicial proceedings, as Symetra Life has done here, a stay is mandatory "in the normal course." *Arabian Motors*, 19 F.4th at 941, 942 ("[A] district court should enter a stay in the normal course . . . .").  Therefore, the Church's request for dismissal of the arbitrable claim(s) must be **DENIED**.

## C.  <u>Symetra Life's Default in Proceeding with Arbitration</u>

Having decided that the first two conditions for an FAA § 3 stay of the proceedings are met, Symetra Life must still show that it is not "in default in proceeding" with its request for arbitration.  Both AMEC and Plaintiffs argue that Symetra Life has waived its right to enforce the arbitration agreement by virtue of its delay in raising arbitration as well as by its conduct in

litigating the claims against it in this matter. Section 3 of the FAA requires a stay of the proceedings only if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The FAA does not define what constitutes a "default in proceeding with such arbitration," and the Sixth Circuit has never specifically construed this language from § 3. The Court of Appeals has implicitly treated the "default" element of § 3 as a party's waiver of its contractual right to arbitration, usually by its delay in seeking the enforcement of an arbitration agreement. *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338–39, n.2 (6th Cir. 2010) (citing § 3 and holding that a party's delay of almost two years in moving to compel arbitration as well as its other procedural motions in the interim resulted in a waiver of its right to arbitration); *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 317 (6th Cir. 1951) (treating a seven-year delay in moving for a § 3 stay as a "default"); *Am. Locomotive Co. v. Chem. Research Corp.*, 171 F.2d 115, 121 (6th Cir. 1949) (same).

To the extent that the Sixth Circuit has not directly reached the issue of what constitutes a "default in proceeding," every other Circuit to have addressed the meaning of "default" under § 3 has interpreted a "default in proceeding with such arbitration" as a "waiver" of the contractual right to arbitrate a dispute subject to an arbitration agreement. *Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.*, 83 F.4th 1113, 1117 (8th Cir. 2023) ("When addressing whether the applicant defaulted, we determine whether the applicant waived its contractual right to arbitrate."); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019); *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) ("Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default."); *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 921 (D.C. Cir. 2011); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 218 (3d Cir.

2007); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 13 (1st Cir. 2005); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995); *Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416, 420 (5th Cir. 1985); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–17, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022) ("The Courts of Appeals, including the Eighth Circuit, have generally resolved cases like this one as a matter of federal law, using the terminology of waiver. For today, we assume without deciding they are right to do so.").

The Court will therefore consider whether Symetra Life has "defaulted in proceeding with arbitration" by waiving its contractual rights with the Church.  The Sixth Circuit has held that an agreement to arbitrate may be "waived by the actions of a party which are completely inconsistent with any reliance thereon."  *Hurley*, 610 F.3d at 338; *see also Highlands Wellmont*, 350 F.3d at 573 (citing *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,* 289 F.3d 434, 438 (6th Cir. 2002)).  The determination of whether the party seeking arbitration has defaulted or waived its rights is for courts to make.  *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) (citing *Ehleiter*, 482 F.3d at 217–18) ("[T]he court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement.").  Because of the strong presumption in favor of arbitration, courts should not lightly infer a party's waiver of its contractual right to arbitration.  *Id.*  "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver, delay, or a like defense to arbitrability*."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added).

The Court holds that Symetra Life has not waived its contractual right to arbitration by

delaying its request for a stay or by any other conduct in this litigation. "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right . . . ." *Sundance*, 596 U.S. at 417, 419 ("Stripped of its prejudice requirement, the Eighth Circuit's current waiver inquiry would focus on Sundance's conduct. Did Sundance, as the rest of the Eighth Circuit's test asks, knowingly relinquish the right to arbitrate by acting inconsistently with that right?"). Symetra Life filed the first of its two Motions to Stay (ECF No. 259) on July 28, 2023, and in direct response to AMEC's Motion to Dismiss Symetra Life's cross-claims for lack of subject-matter jurisdiction based on the 2003 RSA's agreement to arbitrate outside of the Western District of Tennessee. The Church filed its Motion to Dismiss on June 2, 2023, and then its Amended Answer, Cross-Complaint, and Third-Party Complaint (ECF No. 256) on July 25, 2023, the pleading alleging the Church's cross-claims against Symetra Life. So Symetra Life's request for the § 3 stay came three days after AMEC filed its own cross-claims against Symetra Life and 56 days after AMEC moved to dismiss Symetra Life's cross-claims due to the 2003 RSA's arbitration agreement. Based strictly on this timeline of events, it cannot be said that Symetra Life engaged in undue delay in raising the issue of arbitration based on the 2003 RSA with AMEC and making its request for a § 3 stay.

But the filing of the Church's Motion to Dismiss and Amended Cross-Complaint and Symetra Life's Motion to Stay tells only part of the story. Symetra Life had filed its own Cross-Complaint (ECF No. 214) on April 28, 2023, a pleading in which it first alleged AMEC's breach of the 2003 RSA. Symetra Life also made the contract an exhibit (ECF No. 214-2) to its pleading. But Symetra Life never invoked the 2003 RSA's arbitration clause or argued the arbitrability of any of its cross-claims as part of its Cross-Complaint, much less the need for a mandatory § 3 stay. Symetra Life then delayed three months, from April 28, 2023, until July 28, 2023, before

requesting a stay of the proceedings and invoking the 2003 RSA's arbitration clause.

Going further back into the procedural history of the case, the circumstances surrounding the Church's initial pleading and Symetra Life's response to it presents an even closer case for waiver.  AMEC initially filed a Partial Answer and Cross-Complaint (ECF No. 116) on October 18, 2022.  This original pleading alleged cross-claims substantially similar to those in the Church's Amended Cross-Complaint filed in July 2023.  However, AMEC's pleading from October 2022 named Symetra Financial as the cross-defendant, not Symetra Life.  In response to the Church's initial Cross-Complaint, both Symetra Life and Symetra Financial, which was not a party to the action at that time, jointly filed a motion to dismiss (ECF No. 154) on November 23, 2022.  Rather than raise the arbitrability of any of the Church's cross-claims, the motion to dismiss argued that AMEC lacked Article III standing to sue on behalf of the retirement plan and that the Cross-Complaint failed to make plausible allegations to support AMEC's claims for breach of fiduciary duty or negligent misrepresentation.  Symetra Life jointly filed the motion to dismiss with Symetra Financial eight months prior to filing its first Motion to Stay in July 2023.  What is more, Symetra Life did not raise the arbitrability of the Church's cross-claims and instead sought a substantive ruling on the merits of AMEC's initial Cross-Complaint.[9]  Symetra Life's litigation strategy was arguably incompatible with the diligent pursuit of its contractual right to arbitration with AMEC.

But that is not the same thing as intentionally relinquishing a known right.  *Gyro Process*, 185 F.2d at 318 (defining "waiver" as "an intentional relinquishment of a known right").  In the final analysis, the full procedural history of the case does not alter the Court's assessment.  Symetra

_____

[9] When the Court granted the Church leave to amend its pleading, in part so that AMEC could properly name Symetra Financial in a Third-Party Complaint, the Court denied the motion to dismiss the Church's initial Cross-Complaint as moot.  *See* Order Granting AMEC's Mot. for Leave to File Update Pleading, June 22, 2023 (ECF No. 242).

Life has not waived its right to arbitrate with the Church.  Unlike other Sixth Circuit cases where the Court of Appeals has found a waiver, Symetra Life's delay in seeking arbitration ran on for a matter of months, not years.  Symetra Life raised its requests for a stay during the discovery phase of the case and in the process of the parties still framing their pleadings.  A delay of only three months (the time between the filing of Symetra Life's Cross-Complaint alleging the breach of the 2003 RSA and its first Motion to Stay) or even eight months (the time between the filing of its Joint Motion to Dismiss the Church's initial pleading and its first Motion to Stay) does not necessarily amount to a waiver.  *Hurley*, 610 F.3d at 338–39 (delay of two years and additional motion practice amounted to waiver); *Gyro Process*, 185 F.2d at 319 (delay of over seven years); *Chem. Research Corp.*, 171 F.2d 115, 121 (6th Cir. 1949) (same).

Notably, Symetra Life's Motions to Stay came after the Court had denied its motion to dismiss the Church's original Cross-Complaint against it without reaching the merits of the arguments.  The Motions to Stay followed soon after the filing of the Church's Amended Cross-Complaint and its separate Motion to Dismiss Symetra Life's cross-claims.  It is plain that Symetra Life's decision to demand arbitration and seek the § 3 stay came in response to AMEC's request for the dismissal of Symetra Life's cross-claims.  In light of the Supreme Court's admonition to resolve allegations of "waiver, delay, or a like defense to arbitrability" in favor of arbitration, the Court finds that the third and final condition for the stay is met here.  *Moses H. Cone*, 460 U.S. at 24.

The Court holds that § 3 of the FAA obligates the Court to stay the proceedings while the gateway questions of arbitrability are decided in arbitration.  Because the 2003 RSA delegated to an arbitrator the questions of whether the 2003 RSA binds the Church and Symetra Life to arbitrate their dispute, and assuming it does, the scope of their claims "arising out of" their agreement, the

32

Court will stay the proceedings on all cross-claims between AMEC and Symetra Life.  Therefore, the Court **GRANTS** Symetra Life's Motion to Stay (ECF No. 270) the proceedings on its cross-claims against AMEC as well as AMEC's cross-claims against Symetra Life, pending arbitration and a determination of the gateway questions of arbitrability identified here.  Having determined that a stay is mandatory as to the cross-claims between Symetra Life and AMEC, the Court must next decide whether a stay as to Plaintiffs' claims against Symetra Life is warranted.

## III.    Stay of Proceedings on Plaintiffs' Claims Against Symetra Life

"Congress's preeminent concern in enacting the FAA—the enforcement of private agreements to arbitrate as entered into by the parties—requires that the parties only be compelled to arbitrate matters within the scope of their agreement, and this is so even when the result may be piecemeal litigation."  *Bratt Enterps., Inc. v. Noble Intern. Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).  The Court has held that Plaintiffs have stated plausible claims for breach of fiduciary duty and negligence against Symetra Life.  Order on Mots. to Dismiss Consolidated Am. Compl. – Class Action, Mar. 17, 2023 (ECF No. 197).  To avoid what it sees as a risk of piecemeal litigation, Symetra Life requests a stay of the proceedings on Plaintiffs' claims against it in addition to a stay of AMEC's cross-claims against it.  Symetra Life makes several arguments in support of its request to stay the proceedings on Plaintiffs' claims, none of which the Court finds convincing.

First, Symetra Life argues that § 3 of the FAA requires a stay of "the trial of the action," suggesting that the stay granted by the Court should reach all of the claims for relief against Symetra Life, including Plaintiffs' claims for relief.   True, the FAA requires a court to stay "the trial of the action" pending arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement."  9 U.S.C. § 3.  Symetra Life reads

the statute to require a stay of the entire action against it.  The Sixth Circuit has not directly reached the question of how to construe the statutory language "the trial of the action," though its *obiter dicta* in several decisions suggests the correct reading of the phrase.

For example, in its discussion of whether § 3 of the FAA permitted dismissal or required a stay of arbitrable claims, the Court of Appeals in *Arabian Motors* commented: "The reference to 'trial of the action' more naturally signifies that the district court is to stay *the trial that would otherwise occur* if the party did not move for a stay or insist on arbitrating the claims."  *Arabian Motors*, 19 F.4th at 943 (emphasis added).  In other words, the mandatory stay under § 3 meant the trial itself, not pretrial proceedings.  *See also Chem. Res.*, 171 F.2d at 120 ("Arbitration is merely a form of trial, not a 'remedy.'").  The Sixth Circuit made a similar observation in *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995).  In deciding that a § 3 stay did not prevent a district court from entering a preliminary injunction to preserve the status quo while the parties arbitrated their dispute, the Court of Appeals cited with approval the Fourth Circuit's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985).  *Performance Unlimited*, 52 F.3d at 1378–79.  In *Bradley*, the Fourth Circuit construed "trial of the action" to mean "the ultimate resolution of the dispute on the merits" and decided that the phrase did not include "preliminary injunctions *or other pre-trial proceedings*."  *Bradley*, 756 F.2d 1052 (emphasis added) (citing Senate Rep. No. 536, 68th Cong. 1st Sess. (1924); H.R.Rep. No. 96, 68th Congress, 1st Sess. (1924)).

Based on this authority, the Court is persuaded that the use of the phrase "trial of the action" in § 3 of the FAA simply means a trial or some other ultimate resolution of the dispute on the merits, not pretrial discovery. It follows that a mandatory § 3 stay of "the trial of the action" does not require a stay of the proceedings, for example, a stay of discovery on non-arbitrable claims.

Not only would that result be inconsistent with a proper reading of "the trial of the action," a stay would essentially delay relief to parties like Plaintiffs who have never agreed to arbitration.  The Sixth Circuit in *Taylor v. Pilot Corporation*, 697 F. App'x 854 (6th Cir 2017) questioned whether "the FAA would actually *entitle* [a party to an arbitration agreement] to stay the proceedings with respect to plaintiffs that never agreed to arbitrate . . . until [the party had] finished arbitrating with those who had" agreed to arbitrate.  *Taylor v. Pilot Corp.*, 697 F. App'x 854, 860 (6th Cir. 2017) (emphasis added).  *Taylor* cited with approval the Third Circuit's conclusion "that Section 3 was not intended to mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court."  *Id.* (citing *Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709, 711 (3d Cir. 2009).  For the same reasons, Symetra Life has not shown as a matter of statutory construction why the Court must grant a § 3 stay of the proceedings on Plaintiffs' claims against it.

What is more, a § 3 stay of the proceedings as to Plaintiffs' claims would actually be inconsistent with § 3.  The statute clearly conditions a stay on the presence of an issue "referable to arbitration" and  "under such an agreement" to submit the issue to arbitration.  9 U.S.C. § 3. Here the recitals of the 2003 RSA are clear that the agreement, including the arbitration agreement and its delegation clause, was between the Church and Symetra Life's predecessors in interest, Safeco Services Corporation and Safeco Investment Services, Inc.  The contract stipulated as follows: "In connection with the AMEC's Ministerial Retirement Annuity Plan ('the Plan'), the AMEC in its capacities as Plan sponsor, Plan administrator, and, if provided under applicable law, the named fiduciary of the Plan, hereby retains SAFECO Services to provide certain Plan recordkeeping services . . . and retains [Safeco Investment Services] to provide certain Plan asset processing services . . . ."  2003 Recordkeeping Services Agr. 1 (ECF No. 270-1).  Plaintiffs

themselves were not parties to the 2003 RSA.  To the extent Plaintiffs are acting in a representative capacity to pursue the interests of the plan, the plan was also not a party to the 2003 RSA.  As the Court has already explained in its order on the sufficiency of Plaintiffs' Amended Complaint, Plaintiffs have plausibly alleged their Article III standing to bring suit on their own claims in an individual capacity as well as alleged their representative capacity to sue on behalf of the Plan itself.  Order on Mots. to Dismiss Consolidated Am. Compl. – Class Action 19–26 (Article III standing); 35–42 (capacity to sue), Mar. 17, 2023 (ECF No.  197).  Because Symetra Life has not shown that Plaintiffs have agreed to arbitrate a dispute between them or that the Plan itself agreed to arbitration, a § 3 stay of Plaintiffs' claims against Symetra Life would not be appropriate.

Symetra Life falls back then to request a stay of Plaintiffs' claims against it simply as an exercise of the Court's discretion.  Because arbitrable disputes may also involve "persons who are parties to the underlying dispute but not to the arbitration agreement," the FAA "*requires* piecemeal resolution [of the dispute] when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20 (emphasis in original).  Still, as the Supreme Court has noted in what is arguably dicta, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Id.* at 20 n.23.  Such a stay is purely discretionary for the Court as a matter of docket control. *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); *but see Arabian Motors*, 19 F.4th at 943 (reversing a district court's dismissal of a case presenting claims subject to arbitration and commenting the FAA "is not a docket-management statute" to be utilized as a tool for "cleaning out district court dockets").  This means district courts have discretion "to defer discovery or other proceedings pending the prompt conclusion of arbitration." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) (citing *Landis*, 299 U.S. at 254-55).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.  In determining whether to stay the proceedings on the nonarbitrable claims of some parties while other parties to the action proceed with arbitration, courts generally balance four factors:

> (1) whether piecemeal litigation of the nonarbitrable claims could result in inconsistent determinations of factual and legal issues to be determined by the arbitrator; (2) whether piecemeal litigation will be inefficient because the factual issues to be resolved in litigation overlap with those to be decided by the arbitrator; (3) whether the arbitrable issues predominate the lawsuit; and (4) whether the nonarbitrable claims are of questionable merit.

*Swift Enters., LLC v. TruNorth Warranty Plans of N. Am., LLC*, No. 1:21-cv-146, 2022 WL 19396072, at *12 (E.D. Tenn. Sept. 30, 2022) (citing 21 Williston on Contracts § 57:63 (4th ed.)).

On balance these factors weigh against Symetra Life's request for a discretionary stay of Plaintiffs' claims against the company.  At this stage, the only issues to be determined by the arbitrator are (1) whether the 2003 RSA binds the Church and Symetra Life to arbitrate their dispute, and (2) if so, the scope of the issues and claims between the Church and Symetra Life subject to arbitration.  Because these two questions are reserved for the arbitrator and not the Court, there is no risk of inconsistent rulings should the litigation proceed with Plaintiff's claims against Symetra Life.

There is also little risk of inefficiency at this point in the two parallel proceedings, the arbitration between the Church and Symetra Life and the multidistrict litigation.  Symetra Life has already tested the sufficiency of Plaintiffs' allegations in a Rule 12(b) motion to dismiss.  The Court ruled on that motion months ago and held that Plaintiffs' Amended Complaint stated plausible claims against Symetra Life for breach of fiduciary duty and negligence.  The parties are

currently engaged in written discovery on these claims.  Aside from Plaintiffs' claims against Symetra Life, the parties in the judicial proceedings continue to challenge the pleadings of the other parties in a number of motions the Court still has under advisement.  Under the terms of the current case management plan, Plaintiffs are due to present class certification issues to the Court in early 2024.  The fact then that the Church and Symetra Life will proceed with arbitration in another forum will not result in any identifiable duplication of effort.  Furthermore, the arbitrable issues between the Church and Symetra Life do not predominate over the non-arbitrable issues, at least the threshold questions of arbitrability to be decided first as part of arbitration.  On the whole, the Court finds that the factors weigh against a discretionary stay of the proceedings on Plaintiffs' non-arbitrable claims against Symetra Life.

Symetra Life argues that Plaintiffs' non-arbitrable claims and AMEC's arbitrable claims share enough factual and legal overlap to warrant the stay.  At the core of both sets of claims against Symetra Life is the theory that Symetra Life had a duty to confirm the authority of Dr. Harris to engage in certain transactions before Symetra Life transferred Plan funds at Dr. Harris' direction.  Both sets of claims also implicate the question of whether Symetra Life owed the Plan any fiduciary duty and if so, whether Symetra Life breached such a duty.  But Symetra Life's contentions skip an important step: before reaching these merits questions, Symetra Life and AMEC must first submit their dispute over the formation of the 2003 RSA and the sweep of the agreement's arbitration clause to an arbitrator.  "[T]he possibility of different fora resolving different underlying disputes . . . [is] inherent in suits involving underlying contractual claims not all of which are subject to arbitration. *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 395 (6th Cir. 2017) (citing *Moses H. Cone*, 460 U.S. at 20).  But until the arbitrator has decided the threshold issues of arbitrability, the Court has no reason to find that an arbitrator

will necessarily decide any merits dispute between Symetra Life and AMEC, much less that the arbitrator's determination may create a risk of inconsistent outcomes concerning Plaintiffs' claims against Symetra Life.  For all of these reasons, Symetra Life has not shown why the Court should stay the proceedings on Plaintiffs' claims against Symetra Life.

## CONCLUSION

Symetra Life has satisfied the requirements for a mandatory stay of the proceedings pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3, pending arbitration between AMEC and Symetra Life of two gateway issues of arbitrability: (1) whether the 2003 RSA binds the Church and Symetra Life to arbitrate their dispute, and (2) if so, the scope of the issues and claims between the Church and Symetra Life subject to arbitration.  Because of the mandatory nature of § 3 relief, AMEC's Motion to Dismiss Symetra Life's cross-claims against the Church cannot be granted.  Nevertheless, Symetra Life has not shown why a stay of the proceedings, either a mandatory stay under § 3 or a discretionary stay pursuant to the Court's inherent power over its docket, is warranted as to Plaintiffs' claims against Symetra Life.  Therefore, AMEC's Motion to Dismiss is **DENIED**, Symetra Life's Motion to Stay (ECF No. 259) is **GRANTED in part, DENIED in part**, and its Motion to Stay (ECF No. 270) is **GRANTED**.

As part of its case management plan, the Court has set regular status conferences with counsel and required them to submit a written status report at least seven days prior to each conference.  Going forward, AMEC and Symetra Life are specifically instructed to include with the regular status report a detailed update on the status of arbitration.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  December 11, 2023.

39