
# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION** | MDL Case No. 1:22-md-03035-STA-jay<br>ALL CASES<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND AND FILE SECOND CONSOLIDATED AMENDED COMPLAINT** |

## INTRODUCTION AND PROCEDURAL HISTORY

In January 2022, the African Methodist Episcopal Church ("AMEC") made the shocking admission that roughly $90 million in previously-reported funds had gone missing from the retirement plan for thousands of AMEC pastors. Now, two-and-a-half years after that admission and almost two full years after the filing of the operative Complaint, Plaintiffs are in a position to significantly refine their claims and make detailed allegations that were impossible to make prior to discovery. Plaintiffs now seek leave to conform their allegations to the evidence that has been uncovered and file the attached Second Consolidated Amended Complaint (hereinafter "Proposed Complaint" or "SCAC").

For more than two decades, AMEC's Department of Retirement Services, headed by Executive Director Dr. Jerome Harris ("Dr. Harris"), had issued optimistic reports and sunny predictions about the financial health of the AMEC Ministerial Retirement Annuity Plan ("the Plan"). (*See* ECF No. 74[1], Amended Complaint ("Complaint" or "Compl.") at ¶¶ 225–34). At AMEC's July 2021 General Conference, Dr. Harris and AMEC told Conference attendees that the balance of the Plan's assets was nearly $130 million. At the end of that General Conference, Dr. Harris retired and his replacement was elected as the new Executive Director. Within two months of Dr. Harris's retirement, the Plan had suspended disbursements of earned benefits to Plaintiffs. Within five months, AMEC stated publicly that more than $90 million in Plan assets was missing and no one associated with the Church except Dr. Harris knew where to find the assets and records pertaining to the Plan. Less than five months after that, on June 2, 2022, the first five lawsuits against AMEC were consolidated in this court. (*See* ECF No. 1).

---

[1] All ECF citations are made to the electronic docket for 1:22-md-03035.

4881-5654-7131, v. 4

The operative version of Plaintiffs' Complaint was filed on August 19, 2022. (*See* ECF No. 74). At that time, Plaintiffs had received no formal discovery and were forced to rely on a handful of AMEC documents and public statements to compile their complaint. Consequently, the Complaint is colored by uncertainty about basic questions like whether the Plan was covered by ERISA and which corporate entities were used by Dr. Harris and his associates to facilitate a scheme to embezzle and defraud the Plan. The heightened pleading standards of Federal Rule 9(b), which require parties to "state with particularity the circumstances constituting fraud," also restricted Plaintiffs' ability to initially present claims that other individuals and financial service providers actively assisted and conspired with Dr. Harris and Defendant Robert Eaton ("Eaton") to defraud the Plan.

Nevertheless, Plaintiffs' basic narrative was clear: they were victims of a conspiracy (Compl. Count X, ¶¶ 463-469) whereby Dr. Harris and Eaton misappropriated funds, engaged in self-dealing, and used funds from the Plan to enrich themselves (*Id*. Count IV, ¶¶ 397-403). Plaintiffs' claims against other non-AMEC defendants were almost universally concerned with a few key issues: (1) how much these other defendants (particularly the financial and professional service providers) knew about the conspiracy; (2) what duties these defendants owed to Plaintiffs; and (3) how the conspiracy was enabled by the acts or omissions of these other defendants. Accordingly, two claims in the Complaint were premised on the notion that non-AMEC defendants owed Plaintiffs the heightened duties of a fiduciary. (*Id*. Counts I, II). One claim was for simple negligence. (*Id*. Count III).  And two claims alleged that non-AMEC defendants (among others) had fraudulently concealed or misrepresented material facts relating to the activities and results of the conspiracy. (*Id*. Counts V, VI).

4881-5654-7131, v. 4

Defendants Newport Group, Inc. ("Newport"), Symetra Life Insurance Company ("Symetra"), AMEC, AMEC Department of Retirement Services, AMEC General Board, AMEC Council of Bishops, Bishop Samuel Green, and Bishop James Davis (collectively, the "AMEC Defendants") filed Motions to Dismiss some or all of the claims alleged in the Complaint. (*See* ECF Nos. 99, 100, 111). On March 17, 2023, the Court granted those Motions in part. (ECF No. 197). For purposes of the present Motion for Leave, the most relevant decisions by the Court were (1) a finding that Plaintiffs stated a plausible claim against Newport and Symetra for breach of fiduciary duty; (2) a finding that Plaintiffs stated a plausible claim against Newport and Symetra for negligence; and (3) a dismissal without prejudice of Plaintiffs' claims against Newport and the AMEC Defendants for fraudulent concealment and fraudulent misrepresentation. (*Id*. at 86).

Since the Court's ruling on the Motions to Dismiss, the parties have completed twenty-six depositions and partially completed four other depositions.[2] Newport has a pending motion to compel three additional depositions of AMEC witnesses. (ECF No. 432). AMEC has a pending motion to compel nine additional depositions of Symetra witnesses. (ECF No. 415). Plaintiffs have joined AMEC's motion on four of the Symetra witnesses and have requested dates for three additional witnesses identified in the Eaton/FFG 30(b)(6) deposition.

On July 1, 2024, the Court issued a new Order Extending Time for Discovery & Pre-Trial Deadlines. (ECF No. 437). Under the terms of that Order, the deadline for fact discovery is September 18, 2024. (*Id*.). The deadline for parties to request leave to join additional parties or

---

[2] (*See* ECF No. 419-1, Exhibit A to June 2024 Status Report). Since that Status Report was submitted, the parties have completed the depositions of Robert Eaton and Financial Freedom Group. Plaintiff A. Offord Carmichael's deposition, which was originally scheduled for June 20, 2024, was delayed to accommodate an emergency experienced by Symetra's counsel and is being rescheduled.

4

amend the pleadings is September 30, 2024. (*Id*.). The Order states that after September 30, "the Court will consider, inter alia, whether the granting of leave would delay trial." (*Id*.).

## SUMMARY OF CHANGES IN THE PROPOSED COMPLAINT

The major differences between the Complaint and the Proposed Complaint fall into four categories.

### 1.     New Claims Against Existing Defendants

Plaintiffs have expanded their Civil Conspiracy claim to add Symetra and Newport. Plaintiffs specifically allege a series of overt acts that Symetra and Newport committed in furtherance of a common plan to enrich themselves at the expense of the Plan. (*See* SCAC Count VIII, ¶¶ 797-798, 804-05). These overt acts provided substantial assistance to the conspiracy. (*Id*. ¶ 801).

Plaintiffs have added a new claim of Aiding and Abetting Breach of Fiduciary Duty against existing Defendants Newport, Symetra, Financial Freedom Funds, LLC, Financial Freedom Group, Inc., Financial Technologies, LLC, and the Motorskill Entities. (*See* SCAC Count IX). For each of these Defendants, Plaintiffs allege specific acts of substantial assistance to the fiduciary breaches committed by Dr. Harris and Eaton. (*Id*. ¶¶ 827–35).

Finally, Plaintiffs have added a new claim of Professional Negligence against Rodney Brown and Newport. (*See* SCAC Count X). Significantly, the operative Complaint already asserts claims against Rodney Brown and Newport for common negligence. (*See* Compl. Count III; *see also* ECF No. 143 at 70 (the Court's denial of Newport's Motion to Dismiss the negligence claim). The new claim for Professional Negligence draws upon evidence obtained in discovery about the failures of Newport's CPAs to "exercise the reasonable care and competency ordinarily required of accountants . . . when performing the valuations of the Plan's assets and communicating those

valuations to the Plan, Plan Participants, and the Department's auditor." (*See* SCAC ¶ 851). The claim against Rodney Brown alleges similar failures. (*See* SCAC ¶ 861).

### 2. Re-Pleaded Claims That Were Previously Dismissed

Plaintiffs have repleaded some (but not all)[3] of claims that were dismissed by the Court in its March 2023 ruling. First, Plaintiffs have repleaded their claim for violation of the Tennessee Uniform Trust Code against AMEC, Newport, and Symetra. (*See* SCAC Count II, ¶¶ 567–647). This repleaded claim largely follows a line of argumentation concerning "trust advisors" and "trust protectors" that the Court previously ruled had not been adequately supported by factual allegations in the Complaint. (*See* ECF No. 197 at 64).

Second, Plaintiffs have repleaded their claim for Fraudulent Misrepresentation against Newport. In its March 2023 ruling, the Court held that Plaintiffs had failed to make "particular allegations to differentiate the conduct of any one Defendant from another" and failed to allege that Newport made a false representation "either knowingly or without belief in its truth or recklessly." (*See* ECF No. 197 at 76). Plaintiffs have remedied these deficiencies and provided details about Newport's decision to value the Plan's investments in the Motorskill Entities at $7 per unit to facilitate Dr. Harris's explicitly stated desire to improve the apparent returns earned by the Plan. (*See* SCAC ¶¶ 323–29, 743–52).

Third, Plaintiffs have repleaded their claim for Fraudulent Concealment against the AMEC Defendants and Newport. Plaintiffs now allege that the AMEC Defendants deceived Plaintiffs about the actual amount of control and oversight that the AMEC Defendants were exercising over Dr. Harris and the Plan during Dr. Harris's tenure. This claim is more tightly linked with specific

---

[3] The Proposed Complaint does not replead claims for Promissory Estoppel or Tort of Outrage. The proposed Complaint does not replead a claim for Fraudulent Misrepresentation against the AMEC Defendants. The Proposed Complaint does not assert that the Plan is directly governed by ERISA. (*See* SCAC ¶ 11).

responsibilities set forth in the Plan and makes necessary distinctions between the AMEC Defendants. (*See* SCAC ¶¶ 678–702). Plaintiffs now also allege more specific instances where Newport concealed material facts from Plaintiffs. This includes the concealment of (1) the circumstances surrounding the decision to raise the valuation of the Motorskill investment units to $7; (2) the lack of Motorskill statements after 2019; (3) written notice from the Motorskill Entities that certain dividends (subsequently reported to Plaintiffs at face value by Newport) had not yet been paid and earned; and (4) the fact that Newport was advising Dr. Harris on how to offset actual withdrawals from the Plan with the unearned dividends to improve the appearance of the Plan's performance. (*See* SCAC ¶¶ 190–91, 308–42, 357–61, 715).

Fourth, Plaintiffs have repleaded their breach of contract claim against AMEC. The main addition to this claim is a series of factual allegations regarding the context of a disclaimer buried in the Plan Document. Plaintiffs allege that the circumstances of this disclaimer were insufficient to prevent the formation of a contract between AMEC and Plaintiffs. (*See* SCAC ¶¶ 758–86).

### 3. Newly Named Defendants

The Proposed Complaint only adds one new individual defendant: Sandra Harris, the widow of the (now-deceased) Dr. Harris.[4] Sandra Harris worked at the AMEC Department of Retirement Services as Dr. Harris's Executive Assistant. (*See* SCAC ¶ 182). She held multiple joint bank accounts with Dr. Harris and was a signatory for a bank account held in the name of new Defendant Trinity Financial Consultants, LLC. (*See* SCAC ¶¶ 183–84). Sandra Harris withdrew most of her earned benefits from the Plan in 2019 after Dr. Harris learned that a major portion of the Plan's investments were virtually worthless. (*See* SCAC ¶¶ 381–82). Plaintiffs now

---

[4] Dr. Harris passed away on May 8, 2024. (*See* ECF No. 419 at 2). The Proposed Complaint also substitutes his Estate as a Defendant in this matter.

assert claims against Sandra Harris for Civil Conspiracy, Aiding and Abetting Breach of Fiduciary Duty, and Conversion.

The Proposed Complaint also adds two new corporate defendants: Trinity Financial Consultants, LLC ("Trinity") and Day & Night Solar, LLC ("D&N Solar"). Trinity was previously described in the operative Complaint as a corporate vehicle formed by Dr. Harris and used to divert money from the Plan. (*See* Compl. ¶¶ 174–77). With the benefit of discovery, Plaintiffs have learned new details about Trinity's role in the conspiracy against the Plan and specific payments made to Trinity. (*See* SCAC ¶¶ 172–83, 260–61). Plaintiffs now assert claims against Trinity for Civil Conspiracy, Aiding and Abetting Breach of Fiduciary Duty, and Conversion.

D&N Solar was previously described in the operative Complaint as a creation of Eaton that received investments and a large loan from the Plan. (*See* Compl. ¶¶ 194–99, 210–12). Plaintiffs previously alleged that Dr. Harris and Eaton both held ownership stakes in D&N Solar. (*See* Compl. ¶¶ 200, 212). With the benefit of discovery, Plaintiffs have learned new details about the loan to D&N Solar and the circumstances surrounding Dr. Harris's ownership and later divestiture from D&N Solar. (*See* SCAC ¶¶ 203–06, 355–56). Plaintiffs now assert claims against D&N Solar for Civil Conspiracy, Aiding and Abetting Breach of Fiduciary Duty, and Conversion.

### 4. Claims That Have Been Streamlined by Plaintiffs

Plaintiffs have voluntarily dropped certain defendants from a number of claims in the Proposed Complaint. Unlike the operative Complaint, the Proposed Complaint does not assert any claims against Randall Erwin or Jarrod Erwin. The number of defendants in Plaintiffs' Fraudulent Concealment claim have been reduced from sixteen to ten (even after adding Symetra and Newport). The number of defendants in Plaintiffs' Fraudulent Misrepresentation claim has been slashed from fourteen down to two. The number of defendants in Plaintiffs' Negligence claim has been reduced from eleven to eight. Plaintiffs' repleaded claim for violations of the Tennessee

Uniform Trust Code now names only five defendants instead of the eleven that were named prior to the Court's dismissal of that claim.

**KNOWN OBJECTIONS TO THE PROPOSED COMPLAINT**

Prior to the status conference on June 25, 2024, Plaintiffs provided a draft of the Proposed Complaint to all Defendants. Only Eaton/Financial Freedom Group and Newport communicated objections to the Proposed Complaint. The objection of Eaton/Financial Freedom Group (as Plaintiffs understand it) concerns a narrow technical issue about the ability of one pre-existing Plaintiff to have his interests represented by an individual who has been given Power of Attorney. Plaintiffs do not regard this as a valid reason to deny Plaintiffs' Motion for Leave and will not directly address Eaton's objection in this Memorandum.[5]

Newport has objected on the basis that permitting Plaintiffs to file the Proposed Complaint would delay proceedings and prejudice Newport. Plaintiffs understand that Newport's prejudice argument is based on the notion that Newport would have pursued a different strategy in responding to discovery and/or conducting depositions if Newport had known that it was going to be named as a defendant in the Civil Conspiracy claim.

**LEGAL STANDARDS**

The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Factors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Holman v. Vilsack*, 582 F. Supp. 3d 568, 584 (W.D. Tenn. Jan. 26, 2022) (quoting *Wade v.*

---

[5] If Eaton files an Opposition to Plaintiffs' Motion for Leave, Plaintiffs will respond to that Opposition. Additionally, Plaintiffs are currently working to resolve this technical issue and expect to have a guardian substituted for Plaintiff Marcius King in the very near future.

*Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001)). "[B]ut, in general, the mandate that leave is to be 'freely given . . . is to be heeded.'" *Porter v. AAR Aircraft Services, Inc.*, 316 F.R.D. 691, 692 (W.D. Tenn. Oct. 3, 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

### I. Plaintiffs' Motion is Timely and Has Been Brought in Good Faith After Notice to Opposing Parties

As noted above, the current deadline for parties to request leave to join additional parties or amend the pleadings is September 30, 2024. Plaintiffs' motion is therefore timely.

As also detailed above, Plaintiffs provided a draft of the Proposed Complaint to all existing Defendants prior to the June 2024 Status Conference. The presentation of this draft enabled Defendants to decide whether they opposed the Proposed Complaint and give the Court a "preview" of their position during the Status Conference. Therefore, Plaintiffs have provided notice of both the existence of this Motion and the substance of their Proposed Complaint to opposing parties.

Finally, this motion is brought in good faith. In its Order on the Motions to Dismiss, the Court itself noted that Plaintiffs stated at the Motion to Dismiss hearing that they "would likely seek leave to amend their pleadings to include [newly discovered] facts as additional support for their causes of action." (ECF No. 197 at 33). As discussed above, Plaintiffs have neither indiscriminately added claims and parties nor mindlessly repleaded every claim that was asserted in the operative Complaint. Instead, Plaintiffs have diligently pursued discovery until such time as they had a good-faith basis to present detailed allegations that certain Defendants joined in and/or substantially assisted a conspiracy against the Plan.

## II. Plaintiffs' Proposed Amendments Are Not Futile

As discussed above, Plaintiffs have repleaded some claims in a manner that is specifically intended to address deficiencies in the Complaint that the Court identified in its March 2023 ruling. Plaintiffs' added claims have also been drafted in a manner that minimizes undifferentiated group pleading and makes it easier for the Court to match specific overt acts or acts of substantial assistance with individual defendants.

Furthermore, this is the first time that Plaintiffs have sought leave to amend their complaint with the benefit of a significant amount of document discovery and deposition testimony. Rather than simply "pouring old wine into new bottles," Plaintiffs are now in a position to make new factual allegations with specific details about Defendants' actions. For example, whereas at the outset of this litigation Plaintiffs had virtually no insight into how Newport treated the financial documentation that it received from Plan investments, Plaintiffs have now alleged that Newport reported dividends from the Motorskill Entities at full value even though it was apparent from the face of documents that those dividends have never been earned and payable (and thus were illusory). (*See* SCAC ¶¶ 330–42). Plaintiffs are also able to allege that Newport took matters a step further by suggesting to Dr. Harris that he structure his withdrawals of "expenses" from the Plan in a manner that would allow those withdrawals to be offset by the illusory Motorskill dividends. (*See* SCAC ¶¶ 358–63). These specific factual allegations, which are now cited as the basis for multiple claims against Newport, (*see* SCAC ¶¶ 553, 632–33, 715, 744, 805, 827), demonstrate that Plaintiffs' proposed amendments are not futile.

## III. Granting Plaintiffs' Motion Would Not Create Undue Delay or Prejudice the Objecting Defendants in Any Way

As discussed above, the changes in the Proposed Complaint can be divided into four general categories. None of these changes would create undue delay in the prosecution of MDL

11

3035 or prejudice the objecting Defendants (Newport and Eaton/Financial Freedom Group).

First, there is obviously no risk of prejudice or undue delay created by Plaintiffs' decision to voluntarily drop certain claims and refrain from repleading other claims that were previously dismissed by the Court. These decisions reduce, rather than expand, the scope of the MDL and the amount of litigation that will occur in the future.

Second, none of the newly named Defendants in the Proposed Complaint significantly change MDL 3035. The two new corporate defendants were already featured in the previous Complaint as instruments of conspirators Dr. Harris and Eaton. And while Sandra Harris was not featured in the previous Complaint, she was married to Dr. Harris and her addition has no significant effect on the other named Defendants. At most, the addition of Sandra Harris as a Defendant might prompt Newport or another party to add her as a deponent.[6] However, the possibility of a single extra deposition of an individual should not be regarded as a significant delay, let alone an "undue delay" that might justify a denial of Plaintiffs' motion.

Third, Plaintiffs' decision to replead certain previously-dismissed claims against Newport does not create a risk of prejudice or undue delay. Because these claims had been previously alleged in the operative Complaint, Newport was already placed on notice that Plaintiffs were focusing on these particular theories of liability. Furthermore, the Court's March 2023 ruling made it clear at several points that it was dismissing claims because either the Complaint did not satisfy certain technical requirements or the claims did not satisfy the heightened pleading requirements of Rule 9(b). (*See* ECF No. 197 at 64 (refusing to rule on the merits of Plaintiffs'

---

[6] Of course, the information about Sandra Harris that has emerged during the discovery process (the same information that has prompted Plaintiffs to name her as a defendant in the Proposed Complaint) might have already made her a likely deponent even if Plaintiffs had not filed this Motion for Leave to Amend.

"trust protector" argument due to a lack of specific allegations in the Complaint); *id*. at 72–74 (holding that Plaintiffs' Fraudulent Concealment and Fraudulent Misrepresentation claims against Newport did not satisfy the heightened pleading requirements of Rule 9(b)). Given the fact that Plaintiffs had already signaled both their intent to amend their pleadings and their eagerness to use "discovery revelation[s]" to bolster their allegations, (*see* ECF No. 197 at 33), it was entirely foreseeable that Plaintiffs would remedy any technical deficiencies identified by the Court and use evidence obtained in discovery as the basis for revised allegations that could satisfy Rule 9(b).

Fourth, Plaintiffs' addition of claims against Newport for aiding and abetting breach of fiduciary duty and civil conspiracy does not create a risk of prejudice or undue delay. Not only do the factual allegations underpinning these claims substantially overlap with the factual allegations underpinning other claims that have been previously asserted against Newport, but these new claims exist alongside earlier claims on a single continuum of Newport's potential knowledge and assistance to the scheme that is at the heart of MDL 3035.

Since at least September 2022, Newport has clearly signaled its understanding that a central issue in the case was the extent of Newport's knowledge and participation in any scheme involving Dr. Harris and Eaton:

> Plaintiffs make no allegations that Newport had actual knowledge of the alleged embezzlement scheme or that anything in notices to participants was inaccurate, let alone that Newport was knowingly holding back such information. In essence, **Plaintiffs are seeking to pin liability on Newport for knowingly concealing fraudulent activity that it had nothing to do with and knew nothing about.**

(Newport Motion to Dismiss, ECF No. 100-1 at 20) (emphasis added). Even after the Court dismissed Plaintiffs' claims for Fraudulent Concealment and Misrepresentation against Newport, Newport knew three critical pieces of information: (1) it was still facing claims (albeit based on the lower threshold of knowledge applicable to negligence and breach of fiduciary duty) relating

13

to its knowledge of the embezzlement scheme; (2) the Complaint had been filed before any significant amount of formal discovery had been conducted; and (3) Plaintiffs would seize upon any newly-discovered evidence that would support claims that Newport had actual knowledge that Dr. Harris and/or Eaton were abusing their positions and harming the Plan.

Given Newport's knowledge of these facts, Newport cannot credibly claim that Plaintiffs' request to add claims for Aiding and Abetting and Civil Conspiracy is something that fundamentally changes the key issues affecting Newport or otherwise prejudices Newport's defense. Since Newport was already taking the position that it "had nothing to do with" the scheme and "knew nothing about" it, (ECF No. 100-1 at 20), an additional claim that Newport not only knew about the scheme but "shared a common plan or design to enrich [itself and its co-conspirators] at the expense of the Plan" does not affect Newport's factual arguments in any way. (*See* SCAC ¶ 798). Put simply, a plaintiff's decision to amend its pleadings and add a claim (conspiracy) that carries a **more demanding** burden of proof for knowledge and complicity does nothing to prejudice a defendant that was already preparing to defend a claim (negligence) pertaining to the same scheme that carries a **less demanding** burden of proof for knowledge and complicity. To the extent that Newport has marshaled facts and arguments that will adequately defend it on the claim of negligence that has been pending against Newport for almost two years, that work will be at least as successful in defending Newport against new claims of Civil Conspiracy and Aiding and Abetting Breach of Fiduciary Duty. Therefore, granting Plaintiffs' Motion for Leave will not prejudice Newport or create any undue delay in the prosecution of MDL 3035.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant leave to

file the Second Consolidated Amended Complaint.

Dated: July 5, 2024.                               Respectfully submitted,


*/s/ Matthew E. Lee*
Matthew E. Lee
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
919-600-5000
Fax: 919-600-5035
mlee@milberg.com

*Interim Co-Lead Counsel*

Gregorio A. Francis
**OSBORNE & FRANCIS LAW FIRM, PLLC**
433 Plaza Real, Suite 271 Boca Raton, FL 33432
(561) 293-2600
Fax: (561) 923-8100
gfrancis@realtoughlawyers.com


J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
Fax: (615) 255-5419
gstranch@stranchlaw.com

*Liaison Counsel*


Dhamian Blue
**BLUE LLP**
P.O. Box 1730
Raleigh, NC 27602
919-833-1931
Fax: 919-833-8009
dab@bluellp.com

Kenneth S. Byrd
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Ave S
Nashville, TN 37210
615-313-9000
Fax: 615-313-9965
kbyrd@lchb.com

Elizabeth Hopkins
**KANTOR & KANTOR LLP**
19839 Nordhoff Street
Northridge, CA 91324
818-886-2525
Fax: 818-350-6274
ehopkins@kantorlaw.net

Dean Graybill
**AARP Foundation**
601 E Street, NW
Washington, DC 20049
(202) 434-6280
Fax: (202) 434-6424
dgraybill@aarp.org

15

Richard Schulte
**WRIGHT & SCHULTE LLC**
865 S. Dixie Dr.
Vandalia, OH 45377
937-435-9999
Fax: 937-435-7511
rschulte@yourlegalhelp.com

***Plaintiffs' Steering Committee***

*Attorneys for Plaintiffs and Proposed Class*

4881-5654-7131, v. 4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2024, I electronically filed the above with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

<div style="text-align: right;">

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV

</div>

4881-5654-7131, v. 4